# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JOEL M. SCHUMM**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| K.W., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1201-JV-9 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary Chavers, Judge Pro Tempore
Cause No. 49D09-1109-JD-2341

**August 28, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

K.W. appeals his adjudication as a delinquent child for committing resisting law enforcement, as a Class D felony when committed by an adult. K.W. presents a single issue for our review, namely, whether the State presented sufficient evidence to support the true finding.

We reverse.

**FACTS AND PROCEDURAL HISTORY**

On August 30, 2011, K.W., a fifteen-year-old student at Ben Davis High School in Indianapolis, was in a school hallway when he and another student indicated that they were about to fight by "facing off" and raising their fists. Transcript at 3. A teacher intervened and prevented the fight from occurring. The teacher detained K.W. until Eugene Smith arrived. Smith, an officer with the Indianapolis Metropolitan Police Department ("IMPD"), at the time of his interaction with K.W. was working in his capacity as a private "Liaison Officer" employed by the school. Id. at 2. Officer Smith immediately attempted to place K.W. in handcuffs "for [K.W.'s] safety," and K.W. initially complied by putting one arm behind his back. Id. at 3. But as Officer Smith began to place the handcuffs on him, K.W. took one or more steps and "pulled away" from Officer Smith. Id. at 4. Officer Smith then initiated a "straight arm-bar takedown" of K.W. in order to "subdue" him and complete the handcuffing process. Id. Officer Smith struggled with K.W. to get him down to the floor and sustained injuries to his right elbow and right shoulder in the course of the maneuver.

The State filed a delinquency petition against K.W. for resisting law enforcement, as a Class D felony when committed by an adult. Following a hearing, the juvenile court entered a true finding and adjudicated K.W. a delinquent child. This appeal ensued.

## DISCUSSION AND DECISION

K.W. contends that the State presented insufficient evidence to support his adjudication as a delinquent child for committing resisting law enforcement, as a Class D felony when committed by an adult. When presented with a challenge to the sufficiency of the evidence upon review of a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment. J.B. v. State, 748 N.E.2d 914, 916 (Ind. Ct. App. 2001). We will neither reweigh the evidence nor judge witness credibility. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the adjudication. Id.

To prove resisting law enforcement, as a Class D felony when committed by an adult, the State had to show that K.W. knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in the execution of the officer's duties and that K.W. inflicted bodily injury on or otherwise caused bodily injury to another person. See Ind. Code § 35-44-3-3. Here, K.W. contends that the State presented insufficient evidence to prove three elements of the offense, namely, whether Officer Smith was a law enforcement officer engaged in the execution of his duties; whether K.W. forcibly resisted Officer Smith; and whether K.W. inflicted bodily injury or otherwise caused bodily injury to Officer Smith. We find the first of these contentions dispositive, namely, whether Officer Smith was a law

3

enforcement officer lawfully engaged in the execution of his duties. Accordingly, we need only address that issue to resolve this appeal.

Indiana Code Section 35-41-1-17(a) defines "law enforcement officer" as: (1) a police officer (including a correctional police officer), sheriff, constable, marshal, prosecuting attorney, special prosecuting attorney, special deputy prosecuting attorney, the securities commissioner, or the inspector general; (2) a deputy of any of those persons; (3) an investigator for a prosecuting attorney or for the inspector general; (4) a conservation officer; (5) an enforcement officer of the alcohol and tobacco commission; or (6) an enforcement officer of the securities division of the office of the secretary of state. We hold that Officer Smith, an IMPD officer working as a liaison officer at the school, was a law enforcement officer at the time of K.W.'s arrest. See Harris v. State, 831 N.E.2d 848, 851 (Ind. Ct. App. 2005) (holding IPD officer working off-duty at Goodwill Industries was a law enforcement officer for purposes of resisting law enforcement statute), trans. denied.

The question remains, however, whether the State presented sufficient evidence that "the officer [was] lawfully engaged in the execution of the officer's duties." See I.C. § 35-44-3-3 (emphasis added). Officer Smith is a law enforcement officer because he is a police officer, not because he is a liaison officer for the school. The statute requires that an officer be lawfully engaged in the execution of his duties as a law enforcement officer before a conviction for resisting law enforcement will stand. K.W. contends that the evidence shows that Officer Smith was "not 'lawfully engaged in the execution' of the duties of an IMPD officer when he handcuffed K.W. but was instead engaging in the

4

duties of a school liaison officer, which is not covered by the statutory definition of law enforcement officer." Brief of Appellant at 7. We must agree.

In the context of searches and seizures in a school setting, our courts have recognized a clear distinction between a search and seizure for the purpose of furthering "educationally related goals" and for the purpose of a criminal investigation. See T.S. v. State, 863 N.E.2d 362, 371 (Ind. Ct. App. 2007), trans. denied. In particular, in Myers v. State, 839 N.E.2d 1154, 1160 (Ind. 2005), cert. denied, 547 U.S. 1148 (2006), our supreme court reiterated that a reasonableness standard applies where a school official conducts a search or seizure alone or with only minimal police involvement, but the ordinary Fourth Amendment standard applies where "outside" police officers initiate or are predominantly involved in a search and seizure "for police investigative purposes." And in T.S., following a search of a student and seizure of marijuana found on his person, the student was ultimately escorted to a police station by an officer with the Indiana Public Schools Police working in Broad Ripple High School. In holding that the officer's conduct was subject to the reasonableness standard, we observed that the officer was initially only concerned with a possible violation of school rules and had intended to take T.S. to the Dean's office. Thus, we concluded that, at the time of the search and seizure, the officer had "acted as a school resource officer acting to further educationally related goals." T.S., 863 N.E.2d at 371.

Likewise, in State v. C.D., 947 N.E.2d 1018 (Ind. Ct. App. 2011), a student suspected of being intoxicated at school was questioned by an assistant principal and an officer with the Mooresville Police Department employed by the school as a security officer. The officer concluded that the student was under the influence of marijuana, and

5

the assistant principal searched the student's backpack and found two Adderall pills inside. In addressing the student's argument that the evidence should have been suppressed because of violations of his Fifth Amendment rights, we held that no custodial interrogation occurred to trigger those rights. In particular, we stated:

> We note that in C.D.'s case, unlike in G.J.[ v. State, 716 N.E.2d 475 (Ind. Ct. App. 1999)], C.D. was examined by a school security officer in police uniform rather than a school administrator. Under the circumstances of this case, we conclude that this difference is not significant. [Officer] Richhart was not independently investigating the matter. Instead, [Officer] Richhart examined C.D. at [Assistant Principal] Vanwanzeele's request and in Vanwanzeele's presence. Furthermore, after the examination was complete, Vanwanzeele did not immediately ask [Officer] Richhart to take C.D. into custody but instead advised C.D. that he would be suspended. This evidence indicates that [Officer] Richhart was acting to fulfill an educational purpose. Therefore, the fact that [Officer] Richhart, rather than Vanwanzeele, examined and questioned C.D. did not transform the examination into a custodial interrogation. See T.S. v. State, 863 N.E.2d 362, 371 (Ind. Ct. App. 2007), trans. denied (determining, in the context of a student's challenge to being seized by a school security officer, that a search and seizure by a school security officer is reviewed pursuant to a less-stringent standard if the officer was "acting to further educationally related goals").

(Emphases added).

We conclude that the factors which distinguish between law enforcement officers investigating crimes and those serving as school security officers promoting a safe school environment, as set out in Myers, T.S., and C.D., apply here. Officer Smith testified that, as a liaison officer for Ben Davis High School, his duties included serving "as security for all staff [and] students, and enforc[ing] some dress code policies and all other rules and procedures." Transcript at 2. On August 30, 2011, Officer Smith had observed K.W. and another student "facing off" in the hallway before a teacher intervened. Id. As Officer Smith approached K.W., he asked K.W. to turn around, and he "handcuffed him

for his safety[.]" Transcript at 3. Officer Smith further testified that that was "a normal procedure [he] normally do[es]" in such a situation "so neither student would attempt to strike the other one[.]" Id. at 3, 6.

The State did not present any evidence that Officer Smith placed K.W. in handcuffs for purposes of a criminal investigation. Neither did the State allege or present any evidence that K.W. had engaged in criminal behavior, such as disorderly conduct, prior to Officer Smith's attempt to handcuff him. Rather, the evidence shows that Officer Smith intervened and handcuffed K.W. only for K.W.'s safety, which was his "normal procedure" as liaison officer. Id. at 3.

The only reasonable inference to be drawn from the evidence is that Officer Smith was acting in his capacity as the school's liaison officer and only with the intent to further an educational purpose, namely, to control a potential disturbance in the school hallway. But for the crime of resisting law enforcement to have been committed, Indiana Code 35-44-3-3 requires that a law enforcement officer be engaged in his duties as a law enforcement officer at the time of the offender's forcible resistance. A school liaison officer is not a law enforcement officer under the statute, and neither is there any evidence in the record that Officer Smith was acting in his capacity as a law enforcement officer when he handcuffed K.W. Thus, we hold that K.W.'s adjudication for resisting law enforcement cannot stand.

Reversed.

KIRSCH, J., and MAY, J., concur.