ATTORNEY FOR APPELLANT
Joel M. Schumm
Indianapolis, Indiana

Ruth Ann Johnson
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Andrew A. Kobe
Monika Prekopa Talbot
Deputy Attorneys General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court



**FILED**

Feb 22 2013, 9:23 am

*Kevin S. Smith*

**CLERK**

of the supreme court,
court of appeals and
tax court

_____

No. 49S02-1301-JV-20

K.W.,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Marion Superior Court, No. 49D09-1109-JD-2341
The Honorable Gary Chavers, Judge *Pro Tempore*
The Honorable Geoffrey Gaither, Magistrate

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1201-JV-9

_____

**February 22, 2013**

**Rush, Justice.**

A school liaison officer intervened in a hallway scuffle between K.W. and another student. K.W. turned away from the officer's effort to handcuff him, and was adjudicated delinquent for resisting law enforcement. We granted transfer, and now reverse because there is insufficient evidence that K.W. acted "forcibly," as the offense of resisting law enforcement requires.

We also invite the Legislature to consider whether to bring school-resource officers — police officers privately employed by schools for school security and disciplinary purposes — within the ambit of the resisting-law-enforcement statute. The current statute applies to law-enforcement officers only when they are engaged in *law-enforcement* duties, which does not always apply to the different, though important, duties of a school officer. A common-law resolution of that question would risk unintended consequences, but a narrower legislative approach may be appropriate.

## Facts and Procedural History

On August 30, 2011, K.W. and another student were "facing off" in a school hallway, with their fists raised. Tr. 3. A teacher promptly intervened, detaining K.W. until a school-liaison officer could arrive. Id.

The liaison officer who arrived, Eugene Smith, was privately employed by the school, but he was also a sergeant with the Indianapolis Metropolitan Police Department and wearing his IMPD uniform. Tr. 2-3 & State's Exh. 1 (surveillance video of the incident). Sergeant Smith attempted to handcuff K.W. "for [K.W.'s] safety," as was his "normal procedure." Tr. 3.

The facts most favorable to the judgment are that K.W. turned to walk away, pulling against Sergeant Smith's grasp on his wrist. State's Exh. 1; accord, Tr. 3-4 ("[K.W.] began to resist and pull away. . . . He turned, pulled away[.]"). At that point, Sergeant Smith immediately used a "straight arm-bar takedown" to "subdue" K.W., tackled him, and finished handcuffing him. Tr. 4 & State's Exh. 1.

K.W. was adjudicated delinquent without the court ordering any disposition for resisting law enforcement. Thus, the court immediately dismissed the case after finding K.W. delinquent, without imposing terms of probation or any other consequence. K.W. appealed, challenging the sufficiency of the evidence.

The Court of Appeals reversed, finding insufficient evidence that Officer Smith was "lawfully engaged in the execution of the officer's duties" as a law-enforcement officer. K.W. v. State, 976 N.E.2d 61, 63 (Ind. Ct. App. 2012). The Court reasoned that Officer Smith was acting in his

capacity as school-liaison officer but not a law-enforcement officer. Id. at 65. The State sought transfer, and we reverse the trial court, though for different reasons than the Court of Appeals.

## Sufficiency of the Evidence

"In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses." Treadway v. State, 924 N.E.2d 621, 639 (Ind. 2010). "Rather, we look to the evidence and reasonable inferences drawn therefrom that support the [judgment], and we will affirm the [adjudication] if there is probative evidence from which a reasonable [factfinder] could have found the defendant guilty beyond a reasonable doubt." Id. We must therefore reverse if there is no evidence or reasonable inference to support any one of the necessary elements of the offense. E.g., Grace v. State, 731 N.E.2d 442, 445 (Ind. 2000) ("[T]here must be sufficient evidence on each material element" to affirm a conviction).

The basic offense of resisting law enforcement has five essential elements: that K.W. (1) knowingly or intentionally (2) forcibly (3) resisted, obstructed, or interfered with (4) a law enforcement officer, (5) while the officer was lawfully engaged in the execution of the officer's duties. Ind. Code § 35-44-3-3 (2011) (repealed; recodified at I.C. § 35-44.1-3-1 (2012)); Spangler v. State, 607 N.E.2d 720, 723 (Ind. 1993) (construing "forcibly" as modifying the entire string "resists, obstructs, or interferes"). Because the Court of Appeals found the fifth element dispositive, it did not address the others. K.W., 976 N.E.2d at 63. We reverse, though, for insufficient evidence of the second element — whether K.W. "forcibly" resisted, obstructed, or interfered with Officer Smith.

## I. "Forcibly" Resisting

This Court has held that "one 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." Spangler, 607 N.E.2d at 723. The level of force certainly "need not rise to the level of mayhem." Graham v. State, 903 N.E.2d 963, 965 (Ind. 2009). Yet the statute does not demand complete passivity, either. Merely walking away from a law-enforcement encounter, Spangler, 607 N.E.2d at 724, leaning away from an officer's grasp, A.C. v. State, 929 N.E.2d 907, 912 (Ind. Ct. App. 2010), or "twisting and turning 'a little bit'" against an officer's actions, Ajabu v. State, 704 N.E.2d 494, 495-96 (Ind. Ct. App. 1998), do not establish "forcible" resistance.

3

Here, the only evidence presented to the trial court was Sergeant Smith's testimony and the surveillance video of the incident, and neither establishes "force" beyond a reasonable doubt. Sergeant Smith's testimony was merely that K.W. "began to resist and pull away," Tr. 3, or "turned, [and] pulled away," Tr. 4. But nothing in either description suggests any "strength, power, or violence" in K.W.'s maneuver, beyond what is inherent in taking a step away, see Spangler, 607 N.E.2d at 723-24, "lean[ing] away," see A.C., 929 N.E.2d at 912, or "twisting and turning 'a little bit,'" see Ajabu, 704 N.E.2d at 495 — none of which amount to "forcible" resistance.[1] Without evidence of "forcible" resistance, K.W.'s delinquency adjudication cannot be sustained.

## II. School Liaison Officers

Though our grant of transfer vacates the Court of Appeals' opinion, Ind. Appellate Rule 58(A), we acknowledge the legitimate policy question it raised. Our resisting law enforcement statute prohibits "forcibly resist[ing], obstruct[ing], or interfer[ing] with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties." I.C. § 35-44.1-3-1(a)(1) (2012). And while it has become commonplace for schools to employ off-duty law enforcement officers as "liaison officers," "resource officers," and in other similarly titled positions, there are sound reasons to distinguish between police performing school-discipline duties and those performing law-enforcement duties.

"[T]he school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." New Jersey v. T.L.O., 469 U.S. 325, 340 (1985). Thus, officers acting as agents of a school for disciplinary purposes may stop a student to demand identification, D.L. v. State, 877 N.E.2d 500, 505-06 (Ind. Ct. App. 2007), trans. denied; seize a student on an uncorroborated anonymous tip without reasonable articulable suspicion, T.S. v. State, 863 N.E.2d 362, 376-77 (Ind. Ct. App. 2007), trans. denied; and conduct a pat-down search of a student with-

---

[1] The surveillance video further confirms Sergeant Smith's restrained and cautious characterization of K.W.'s conduct. It shows K.W. turning and taking a step away from Sergeant Smith while his arm was still in the officer's grasp, immediately after which Sergeant Smith brought him to the floor by the "straight arm-bar takedown" his testimony described. Compare State's Exh. 1, with Tr. 3-4. See also Scott v. Harris, 550 U.S. 372, 380-81 (2007) (assessing the overall summary judgment record in light of undisputedly accurate video of the event at issue).

out warrant or probable cause, <u>C.S. v. State</u>, 735 N.E.2d 273, 276 (Ind. Ct. App. 2000), <u>trans. denied</u> and <u>D.B. v. State</u>, 728 N.E.2d 179, 181 (Ind. Ct. App. 2000), <u>trans. denied</u> — all of which would be unconstitutional for law-enforcement purposes.

We recognize it is somewhat anomalous that two uniformed law-enforcement officers responding to the same school incident could be treated differently for purposes of resisting law enforcement, if one was purely an "outside" officer while the other was a school-resource officer. School-resource officers serve a vitally important role in maintaining school safety and order against a growing range of discipline problems and threats, and we in no way diminish the value of their work. Yet we are also reluctant to risk blurring the already-fine Fourth Amendment line between school-discipline and law-enforcement duties by allowing the same officer to invisibly "switch hats" — taking a disciplinary role to conduct a warrantless search in one moment, then in the next taking a law-enforcement role to make an arrest based on the fruits of that search.

We note, though, that it would be within the Legislature's prerogative to conclude that evolving threats to school security and discipline warrant expanding the resisting law enforcement statute to apply to forcible resistance, obstruction, or interference "with a law enforcement[, school liaison, or school resource] officer[,] or a person assisting the officer[,] while the officer is lawfully engaged in the execution of the officer's duties." <u>See</u> I.C. § 35-44.1-3-1(a)(1). Not only is such a policy judgment about the changing role of school officers best reserved to a politically responsive branch of government, it would be less likely than common law to cause unintended Fourth Amendment consequences. The Legislature may wish to consider such a change.

**Conclusion**

Because there is insufficient evidence that K.W. forcibly resisted Sergeant Smith, we reverse the trial court and vacate K.W.'s delinquency adjudication.

Dickson, C.J., and Rucker, David, and Massa, JJ., concur.