## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 26 2016, 9:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven A. Pearson,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | September 26, 2016<br><br>Court of Appeals Case No.<br>49A05-1512-CR-2198<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shannon Logsdon, Commissioner<br><br>Trial Court Cause No.<br>49G08-1411-CM-51718 |

**Brown, Judge.**

[1] Steven A. Pearson appeals his conviction for resisting law enforcement as a class A misdemeanor. Pearson raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

*Facts and Procedural History*

[2] On November 16, 2014, Pearson was arrested for public intoxication and resisting law enforcement and was placed in a holding cell at the Arrestee Processing Center ("APC") in Marion County. Sergeant Daniel Majors went to the cell where Pearson was lying on a bench with his head covered and asked him to remove a black hoodie covering his face because of the department's policy to see a face at all times to make sure the person is breathing. Pearson became "very agitated," and Deputy Matthew Renner and Deputy Christopher Ramey stepped over to assist. Transcript at 16. When asked to remove the hoodie, Pearson pulled it off over his head and said, "Take the shirt." *Id.* at 7. Sergeant Majors reached out, grabbed a hold of the shirt, and Pearson "pulled it back towards him which pulled [Sergeant] Majors into him" and "down on top of him." *Id.* at 7, 16.

[3] At this point, Pearson's hands were inside his hoodie. Deputy Ramey assisted Sergeant Majors in "trying to get Mr. Pearson's hands away from him to get him handcuffed" and grabbed Pearson's arm. *Id.* at 8. Pearson was "aggressive" towards the deputies. *Id.* at 17. Deputy Renner stepped around to Pearson's top half of his body and "secured him on the bench so he couldn't get up to continue to fight." *Id.* at 7. Pearson "rolled his hips which knocked his . . . he came off the bench" and continued to "try to get to his feet." *Id.* Pearson

was told to stop resisting, and Deputy Renner announced "[t]aser, taser, taser," before deploying his taser. *Id.* at 8. Deputy Renner was subsequently able to handcuff Pearson.

[4] On November 16, 2014, the State charged Pearson with resisting law enforcement as a class A misdemeanor. On November 20, 2015, the court held a bench trial. Deputy Renner and Deputy Ramey testified. Pearson testified that he went to a bar on November 15, 2014, because his "ex wouldn't let [him] bring [his] son some Legos . . . ." *Id.* at 22. According to Pearson, he had numerous drinks, the next thing he remembered happening was standing on the side of a deck where someone swung a gate open and tased him, that he was tased four times in the bar, that he was incoherent after being tased at the bar, and that he did not remember going into the APC or being asked to remove his hoodie.

[5] After the parties rested, Pearson's counsel argued that Pearson was not knowingly or intentionally misbehaving in the APC based on his high level of intoxication and his impairment from a combination of the alcohol and the effects of being tased. The court stated that it was Pearson's choice not to comply with the instructions of the deputies and that his voluntary intoxication was not a defense. The court found Pearson guilty as charged and sentenced him to 365 days with 355 days suspended.

## *Discussion*

[6] The issue is whether the evidence is sufficient to sustain Pearson's conviction. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[7] The offense of resisting law enforcement as a class A misdemeanor is governed by Ind. Code § 35-44.1-3-1, which provides that "[a] person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor . . . ."[1] The charging information alleged that Pearson "did knowingly or intentionally forcibly resist, obstruct or interfere with DANIEL J MAJORS, a law enforcement officer with the Marion County

---

[1] Subsequently amended by Pub. L. No. 198-2016, § 673 (eff. July 1, 2016).

Sheriff's Office, and/or MATTHEW A RENNER, a law enforcement officer with the Marion County Sheriff's Office, while said officer was lawfully engaged in his duties as a law enforcement officer . . . ." Appellant's Appendix at 15.

[8] Pearson argues that there is insufficient evidence that he acted forcibly. He asserts that there was no power or violence in his lone maneuver during this commotion and that, even if there was, he was reacting to the deputies' demands due to his voluntary intoxication prior to the arrest. He contends that although voluntary intoxication is not a defense to his conviction, it should be considered as an explanation of the slow reaction to the deputies' orders and a lack of manual dexterity instead of forcible resistance. The State argues that the evidence is sufficient where Pearson pulled an officer into him and then continued to struggle after repeatedly being told to stop resisting.

[9] The Indiana Supreme Court has held that "[s]uch a seemingly simple statute . . . has proven to be complex and nuanced in its application." *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). In *Spangler v. State*, 607 N.E.2d 720, 722-723 (Ind. 1993), the Indiana Supreme Court held that the word "forcibly" is an essential element of the crime and modifies the entire string of verbs—resists, obstructs, or interferes—such that the State must show forcible resistance, forcible obstruction, or forcible interference. The Court also held that the word meant "something more than mere action." *Spangler*, 607 N.E.2d at 724. "[O]ne 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties."

*Id.* at 723. "[A]ny action to resist must be done with force in order to violate this statute. It is error as a matter of law to conclude that 'forcibly resists' includes all actions that are not passive." *Id.* at 724.

[10] "But even so, 'the statute does not demand complete passivity.'" *Walker*, 998 N.E.2d at 727 (quoting *K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013)). In *Graham v. State*, 903 N.E.2d 963, 965 (Ind. 2009), the Court clarified that "[t]he force involved need not rise to the level of mayhem." "In fact, even a very 'modest level of resistance' might support the offense." *Walker*, 998 N.E.2d at 727 (quoting *Graham*, 903 N.E.2d at 966) ("even 'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice")). The Indiana Supreme Court held:

> So in summary, not every passive—or even active—response to a police officer constitutes the offense of resisting law enforcement, even when that response compels the officer to use force. Instead, a person "forcibly" resists, obstructs, or interferes with a police officer when he or she uses strong, powerful, violent means to impede an officer in the lawful execution of his or her duties. But this should not be understood as requiring an overwhelming or extreme level of force. The element may be satisfied with even a modest exertion of strength, power, or violence. Moreover, the statute does not require commission of a battery on the officer or actual physical contact—whether initiated by the officer or the defendant. It also contemplates punishment for the active threat of such strength, power, or violence when that threat impedes the officer's ability to lawfully execute his or her duties.

*Id.*

In *Berberena v. State*, which is cited by Pearson, a police officer "gave several loud verbal commands" for Edwin Berberena to stop. 914 N.E.2d 780, 780-781 (Ind. Ct. App. 2009), *trans. denied*. The police officer ordered Berberena to place his hands behind his back, but Berberena did not comply. *Id.* at 781. The officer then "had to forcefully place [Berberena] against the wall of the building. [Berberena's] chest was facing the building, and [the officer] had to struggle with him to grab his hands and place them in handcuffs." *Id.* The trial court found Berberena guilty of resisting law enforcement. *Id.* On appeal, the court held that the officer's testimony "that he struggled to place the handcuffs on Berberena's wrists [was] ambiguous." *Id.* at 782. The court also observed that the officer "did not testify, and there [was] no evidence, that Berberena stiffened his arms or otherwise 'made threatening or violent actions' to contribute to the struggle." *Id.* (quoting *Ajabu v. State*, 704 N.E.2d 494, 496 (Ind. Ct. App. 1998)). Lastly, the court observed that the officer "could not remember what Berberena was doing with his hands, and the struggle did not last very long." *Id.* The court concluded that the evidence was insufficient to support Berberena's conviction. *Id.* at 783.

Pearson also cites *Colvin v. State*, 916 N.E.2d 306 (Ind. Ct. App. 2009), *trans. denied*. In that case, Curtis Colvin kept his hands in his pockets during a struggle with officers and did not comply with officers' commands, and the officers had to use force to execute the arrest. 916 N.E.2d at 309. The State did not present any evidence that Colvin used force or made threatening or violent actions to contribute to the struggle with the officers. *Id.* The court held that

the evidence did not support a reasonable inference that Colvin did more than passively resist the officers. *Id.*

[13] Here, unlike the defendants' actions in *Berberena* and *Colvin*, we cannot say that the State did not present any evidence that Pearson used force. The record reveals that Sergeant Majors asked Pearson to remove his hoodie from his face, that Pearson became very agitated, pulled his hoodie over his head, and said "Take the shirt," and that when Sergeant Majors reached out and grabbed a hold of the shirt, Pearson pulled it back towards him "which pulled [Sergeant] Majors into him" and "down on top of him." Transcript at 7, 16. Deputy Renner testified that he stepped around to Pearson's head and secured him on the bench so that Pearson "couldn't get up to continue to fight." *Id.* at 7. When asked if Pearson continued to fight, Deputy Renner answered: "Yes he rolled his hips which knocked his . . . he came off the bench. He continued to try to get to his feet." *Id.* Further, as conceded by Pearson, his voluntary intoxication is not a defense. *See* Ind. Code § 35-41-2-5 ("Intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of IC 35-41-3-5."); Ind. Code § 35-41-3-5 ("It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body . . . without his consent . . . or . . . when he did not know that the substance might cause intoxication."); *see also Sanchez v. State*, 749 N.E.2d 509, 520 (Ind. 2001) (discussing Ind. Code § 35-41-

3-5 and holding that the statute "redefines the requirement of mens rea to include voluntary intoxication, in addition to the traditional mental states, i.e., intentionally, knowingly, and recklessly").

[14] Based upon the record, we conclude that there exists evidence of probative value from which a reasonable trier of fact could find that Pearson exercised at least a modest exertion of strength, power, or violence that impeded Sergeant Majors and/or Deputy Renner in the lawful execution of their duties and that he was guilty beyond a reasonable doubt of resisting law enforcement as a class A misdemeanor. *See Lopez v. State*, 926 N.E.2d 1090, 1093-1094 (Ind. Ct. App. 2010) (holding that the evidence was sufficient to prove that the defendant acted with the requisite force in resisting the officers in the execution of their duties where the defendant refused to stand and "started to pull away" when the officers tried to physically pull him up from the couch and where the officers were unable to pull his arms out from under the defendant), *trans. denied*; *Johnson v. State*, 833 N.E.2d 516, 518-519 (Ind. Ct. App. 2005) (holding that the defendant forcibly resisted police officers by turning away and pushing away with his shoulders as they attempted to search him, refusing to enter the transport vehicle, and stiffening up, thus requiring the officers to exert force to place him inside the transport vehicle).

## *Conclusion*

[15] For the foregoing reasons, we affirm Pearson's conviction.

[16] Affirmed.

Robb, J., and Mathias, J., concur.