## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 18 2018, 9:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Indianapolis, Indiana

Elizabeth A. Houdek
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D.W.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

July 18, 2018

Court of Appeals Case No.
49A02-1712-JV-2849

Appeal from the
Marion Superior Court

The Honorable
Marilyn A. Moores, Judge
The Honorable
Geoffrey Gaither, Magistrate

Trial Court Cause No.
49D09-1706-JD-796

**Kirsch, Judge.**

[1] D.W. appeals his adjudication as a delinquent child for committing offenses that would be Level 6 felony receiving stolen auto parts,[1] Level 6 felony theft,[2] and Class A misdemeanor criminal trespass,[3] if committed by an adult. He raises three issues, of which we find the following to be dispositive: whether the State presented sufficient evidence to support each of the true findings.

[2] We reverse and remand with instructions.

## Facts and Procedural History

[3] At around 9:00 p.m. on June 7, 2017, Indianapolis Metropolitan Police Department ("IMPD") Officer Jordan Huffman ("Officer Huffman") was dispatched to the Skateland roller skating rink on the report of a stolen vehicle, namely a 2012 Ford E-350 twelve-passenger van owned by John Schott ("Schott"). When he arrived, Officer Huffman met with Schott's wife, Anne Schott ("Anne"), who several hours earlier had driven seven children in the van to Skateland, and when they came out around 8:30 p.m., the van was gone. Schott arrived on the scene and verified that he had not moved the vehicle. Anne still had the keys with her, and she told Officer Huffman that she thought she had locked it. There was no broken glass on the ground in the parking lot where the van had been parked. Anne told Officer Huffman that, when she

---

[1] *See* Ind. Code § 35-43-4-2.5(c).

[2] *See* Ind. Code § 35-43-4-2.

[3] *See* Ind. Code § 35-43-2-2(b)(4).

parked the vehicle and went inside the rink, there had been two booster seats and two child car seats, along with two infant seat bases (together, "the child safety seats"), in the van.

[4] At around 5:00 a.m. the next day, officers were dispatched to an apartment complex in Marion County regarding a suspicious vehicle, specifically a white passenger van parked and occupied by individuals. IMPD Officer Anthony Carter ("Officer Carter") responded and observed three juvenile males, later identified as G.K., D.W., and N.M., asleep in the van. G.K. was in the driver's seat, D.W. was in the middle row of seats, and N.M. was in the back row. Officer Carter checked the license plate in his computer and determined it had been reported as stolen. Other officers arrived at the scene, and the three occupants were awakened, removed, and transported to the juvenile processing center. Anne was contacted and came to the scene to take possession of the van. Upon arrival, she observed that the van's interior was damaged, the child safety seats were missing, and there were various personal items in the van that did not belong to the Schotts. Those items were removed and transported to IMPD's property room.

[5] On June 8, 2017, the State filed, and the trial court subsequently approved, a delinquency petition, alleging that D.W. committed acts that would constitute the following offenses if committed by an adult: Count 1, Level 6 felony receiving stolen auto parts by knowingly or intentionally receiving, retaining, or disposing of Schott's motor vehicle, which had been the subject of theft; Count 2, Level 6 felony theft by knowingly or intentionally exerting unauthorized

control over Schott's child safety seats; and Count 3, Class A misdemeanor criminal trespass by knowingly or intentionally interfering with the possession or use of "the property of [] Schott" without his consent. *Appellant's App. Vol. II* at 22.[4]

[6] On August 27, 2017, the juvenile court conducted a combined denial hearing for D.W., G.K. and N.M., who each faced the same delinquency allegations. Schott testified that he owned the van, that that he did not know D.W. or the other two juveniles who were found asleep in his van, and none had his permission to use it. He said when it was found the next morning, it was "trashed" and had "lots of . . . I guess stolen items in it[.]" *Tr. Vol. II* at 10. Anne testified that on June 7 she drove the van to Skateland around 6:00 p.m., taking a group of children to skate. She described that the van "was in good condition since it was fairly new" and that it had six child safety seats in it when she parked and went inside Skateland. *Id.* at 13. When she came out around 9:00 p.m., the van was gone, so she called 911. She stated that when she saw the van the next morning, "[I]t reeked of marijuana, it was trashed, there was food, there was a variety of electronics, sunglasses, shoes, cologne, candy, drug paraphernalia, um, it was just covered in trash." *Id.* at 14. She testified that none of those items belonged to the Schotts. Anne stated that the

---

[4] On appeal, one of D.W.'s three claims of error is that the delinquency petition's charging information for criminal trespass was defective because it did not identify what property of Schott's was used or interfered with, and because D.W. did not object to the allegation, he acknowledges that he needed to show fundamental error. Because we resolve D.W.'s appeal on other grounds, we do not reach this issue.

child safety seats were gone and also testified, "[A]ll of my personal items were no longer in there[,]" except for a "a few small items." *Id.* Receipts were admitted into evidence showing the cost to replace what was stolen, as well as what she paid to repair damage to the seat belts, air vents, the overhead DVD player, and burns to the upholstery. Anne stated that she did not know D.W. or the other juveniles and that they did not have permission to be in the Schotts' van.

[7] Officer Carter testified that when he arrived at the apartment parking lot at around 5:20 a.m., in response to the dispatch regarding a suspicious vehicle, he saw the van with three sleeping occupants, he determined that the "large 12-passenger van" was stolen, and he called for assistance. *Id.* at 20. He said when other officers arrived, they banged on the windows and woke the driver and then the others. Officer Carter testified that D.W. was in the middle row of seats. He stated that the location where the van was found was "within six blocks" of Skateland. *Id.* at 19. Officer Joshua Treft ("Officer Treft") testified that he arrived at the scene, parked his vehicle in front of the van, and waited for other officers to arrive. He described that the occupants were "compliant" once the officers woke them. *Id.* at 25. He estimated that where the van was found was "maybe a mile" from Skateland. *Id.* at 24.

[8] At the conclusion of the hearing, the juvenile court entered a true finding as to the three allegations: receiving stolen auto parts, theft, and criminal trespass. *Id.* at 33. That same date the juvenile court issued a written Order on Fact Finding hearing that ordered D.W. to continue on previously-imposed release

conditions and set the matter for dispositional hearing. *Appellant's App. Vol. II* at 84-86. The November 9, 2017 Dispositional Order suspended commitment to the Indiana Department of Correction and placed D.W. on probation, which included terms of day reporting and GPS electronic monitoring. *Id.* at 14-16. D.W. now appeals.

## Discussion and Decision

[9] D.W. argues that the evidence was not sufficient to support the three true findings. A finding by a juvenile court adjudicating a child to be a delinquent must be based upon proof beyond a reasonable doubt. Ind. Code § 31-37-14-1. Our review for the sufficiency of the evidence with respect to juvenile adjudications is the same as for criminal convictions. *A.J.R. v. State*, 3 N.E.3d 1000, 1004 (Ind. Ct. App. 2014). We neither reweigh the evidence nor judge the credibility of the witnesses. *D.J. v. State,* 88 N.E.3d 236, 241 (Ind. Ct. App. 2017). We consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *C.L. v. State*, 2 N.E.3d 798, 799 (Ind. Ct. App. 2014). We will reverse if there is no evidence or reasonable inference to support any one of the necessary elements of the offense. *K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013).

[10] D.W. argues that the State did not present substantial evidence of probative value from which a reasonable factfinder could conclude beyond a reasonable

doubt that his conduct, if committed by an adult, would constitute Level 6 felony receiving stolen auto parts, Level 6 felony theft, and Class A misdemeanor criminal trespass. We agree.[5]

## Receiving Stolen Property

[11]    In order to make a true finding of delinquency for Level 6 felony receiving stolen auto parts, the State was required to prove beyond a reasonable doubt that D.W. knowingly or intentionally received, retained, or disposed of a motor vehicle or any part of a motor vehicle of another person, here, Schott, that had been the subject of theft. Ind. Code § 35-43-4-2.5(c); *Appellant's App. Vol. II* at 22. The State must also prove beyond a reasonable doubt that the person knew the property was stolen. *Fortson v. State,* 919 N.E.2d 1136, 1143-44 (Ind. 2010). D.W. argues that "[t]here was simply no evidence at all that D.W. knew the van was stolen." *Appellant's Br.* at 8-9. We agree.

[12]    Knowledge that property is stolen may be established by circumstantial evidence. *Fortson*, 919 N.E.2d. at 1143. However, knowledge of the stolen character of the property may not be inferred solely from the unexplained possession of recently stolen property. *Id*. "Possession of recently stolen property when joined with attempts at concealment, evasive or false statements,

---

[5] We note that the juvenile court entered the same three true findings for N.M., who was in the back row of seats, as it did for D.W., and N.M. filed a direct appeal. By memorandum decision, a panel of this court reversed, determining that the evidence was not sufficient to support any of the three true findings. *N.M. v. State*, No. 49A05-1711-JV-2539, 2018 WL 2124676 (Ind. Ct. App. May 9, 2018). We agree with our colleagues' decision and reasoning.

or an unusual manner of acquisition may be sufficient evidence of knowledge that the property was stolen." *Barnett v. State*, 834 N.E.2d 169, 172 (Ind. Ct. App. 2005); *see also Driver v. State*, 725 N.E.2d 465, 470-71 (Ind. Ct. App. 2000) (trier of fact may infer that a defendant had knowledge that property was stolen based on defendant having possession of it along with lying about how he acquired it).

[13] Here, at the denial hearing, the State presented evidence that Anne drove the van to Skateland, and it was stolen sometime between about 6:00 p.m. and 9:00 p.m. on June 7, 2017. No surveillance or other evidence was presented as to when or how it was stolen. When Anne parked and left the van, it was in "good" condition. *Tr. Vol. II* at 13. It was found at around 5:00 a.m. the next day, parked in an apartment complex about six blocks away, and three juveniles were sleeping in it. The van was "trashed," and D.W. was in the middle row of seats. *Id.* at 10. The Schotts testified that they did not know the three juveniles and did not give any of them permission to use or be in their van. When the police woke the juveniles, they exited the van one by one and were described as "compliant." *Id.* at 25.

[14] While the State's evidence proved that D.W. was found asleep in the recently-stolen van, there was no evidence that D.W. gave evasive or false answers to officers or attempted to resist or flee. There also was no evidence that anyone attempted to conceal the van or alter its plates, and no evidence that windows or locks were broken. Based on the record before us, the State failed to present sufficient evidence from which the juvenile court could infer that D.W. knew

that the van was stolen.  *See Fortson*, 919 N.E.2d at 1143-44 (reversing conviction for receiving stolen property where defendant was found driving stolen vehicle within hours after it was stolen, but there was no evidence that defendant provided evasive answers, attempted to flee or resist officers, or attempted to conceal the truck, and thus State failed to provide other facts to support an inference of knowledge).  Accordingly, the evidence to support D.W.'s true finding for receiving stolen auto parts was insufficient.

## Theft

[15]    To prove that D.W. committed what would be Level 6 felony theft if committed by an adult, as charged, the State was required to prove that he knowingly or intentionally exerted unauthorized control over Schott's child safety seats with the intent to deprive Schott of any part of the property's value or use, in an amount greater than seven hundred fifty dollars and less than fifty thousand dollars.  Ind. Code § 35-43-4-2; *Appellant's App. Vol. II* at 22.  D.W. argues that the evidence was insufficient to prove theft as charged, arguing, "The State offered no evidence at all to support its charge of theft other than D.W.'s mere presence inside the stolen van that had contained the missing car seats twelve hours previously."  *Appellant's Br.* at 9.

[16]    Here, the State presented no evidence of what occurred in the less-than-twelve hours between the time that the van was taken from Skateland and when it was found with the three juveniles sleeping in it and no evidence that D.W. removed the child safety seats or even was present when the seats were removed from the van.  The State failed to prove beyond a reasonable doubt

that he knowingly or intentionally exerted unauthorized control over the child safety seats with the intent to deprive Schott of any part of their use or value. Accordingly, the State failed to present sufficient evidence to support a true finding of what would be Level 6 felony theft if committed by an adult.

## Criminal Trespass

[17] To support D.W.'s true finding for criminal trespass, the State had to prove that D.W. knowingly or intentionally interfered with the possession or use of the property of Schott without his consent. Ind. Code § 35-43-2-2(b)(4); *Appellant's App. Vol. II* at 22. D.W. argues, "Without knowledge the van was stolen, D.W. could not knowingly or intentionally interfere with the actual owner's interest in the van[.]" *Appellant's Br*. at 10. We disagree with that reasoning because the offense of criminal trespass did not require the State to prove that D.W. knew the van was stolen; it required the State to show that he knowingly or intentionally used it without the owner's consent. Nevertheless, we must agree with D.W. that the evidence was insufficient to support a true finding for criminal trespass.

[18] Here, the State's evidence was that Anne drove the van to Skateland on the evening of June 7, and it was stolen sometime before 9:00 p.m. Early the next morning, officers found the van about half a mile away, and D.W. was asleep in it without the Schotts' permission. *Tr. Vol. II* at 9, 19-20, 24. The evidence thus established that (1) D.W. interfered with the Schotts' use or possession of the van (2) without the owner's consent. What remains is whether the evidence

was sufficient to prove that D.W. knowingly or intentionally did so, as required by Indiana Code section 35-43-2-2(b)(4).

[19] We recognize that "the mens rea element for a criminal offense is almost inevitably, absent a defendant's confession or admission, a matter of circumstantial proof." *Hampton v. State,* 961 N.E.2d 480, 487 (Ind. 2012). Here, the State failed to present any evidence to prove that D.W. knowingly or intentionally used or possessed the van without Schott's consent. D.W. was found asleep in the middle row of seats of Schott's trashed van less than twelve hours after it was stolen. We do not know how the van was stolen, who stole it, when or under what circumstances D.W. entered the van, whether he knew it did not belong to any of the other two occupants, or whether he believed he or the others had obtained consent from someone for its use. Based on the limited evidence presented and our standard of review, and like our colleagues in *N.M. v. State*, No. 49A05-1711-JV-2539, 2018 WL 2124676, at *3 (Ind. Ct. App. May 9, 2018), we conclude that the State failed to present sufficient evidence that D.W. knowingly or intentionally interfered with the possession or use of Schott's van without Schott's consent. We reverse and remand with instructions to vacate the true findings.[6]

[20] Reversed and remanded with instructions.

---

[6] Because D.W.'s sufficiency claims are dispositive, we need not reach his claim that the true findings violate Indiana's prohibition against double jeopardy.

Bradford, J., concurs.

Baker, J., concurs in part and dissents in part with separate opinion.

D.W.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

Court of Appeals Case No.
49A02-1712-JV-2849

## Baker, Judge, dissenting in part.

[21] I respectfully dissent from the majority's conclusion regarding D.W.'s delinquency adjudication for criminal trespass.[7] As the majority notes, to establish that D.W. committed an act that would have been criminal trespass had it been committed by an adult, the State needed to prove that D.W. knowingly or intentionally interfered with the possession or use of the property of Schott—the van—without his consent. I.C. § 35-43-2-2(b)(4).

---

[7] I likewise respectfully disagree with the resolution of this issue by a different panel in the companion case of *N.M. v. State*, No. 49A05-1711-JV-2539 (Ind. Ct. App. May 9, 2018).

[22] Schott testified that he owned the van, that he did not know D.W. or the other two juveniles who were found asleep in his van, and that none had his permission to use it. A reasonable factfinder could infer from this testimony that as D.W. did not know Schott and did not have his permission to use the van, D.W. acted knowingly or intentionally. As such, I believe the evidence is sufficient to support this adjudication and would affirm on this issue. In all other respects, I agree with the majority.