

FILED

Oct 05 2023, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General

J.T. Whitehead
Deputy Attorney General

Amanda Martin-Nelson
Certified Legal Intern
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William H. Denney,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 5, 2023

Court of Appeals Case No.
23A-CR-523

Appeal from the
Switzerland Circuit Court

The Honorable
W. Gregory Coy, Judge

Trial Court Cause No.
78C01-1907-CM-352

**Opinion by Judge Vaidik**
Judges Mathias and Pyle concur.

**Vaidik, Judge.**

# Case Summary

William H. Denney appeals his convictions for Level 6 felony intimidation, Class A misdemeanor resisting law enforcement, Class B misdemeanor disorderly conduct, and Class B misdemeanor public intoxication, arguing the State failed to present sufficient evidence to support the convictions. We affirm his convictions for intimidation, disorderly conduct, and public intoxication but reverse the conviction for resisting law enforcement. The State charged Denney with forcible resistance, which our Supreme Court has held requires the use of strong, powerful, or violent means to evade law enforcement. Here, the State showed that Denney "pulled away" from a law enforcement officer before the officer could grab Denney's arm. This does not rise to the level of forcible resistance. Therefore, we affirm in part and reverse in part.

# Facts and Procedural History

The evidence most favorable to Denney's convictions is as follows. On July 27, 2019, security guards and Indiana Gaming Commission (IGC) agents at Belterra Casino Resort received an alert that Denney was being disruptive and threatening others in the lobby bar. When security supervisor Paul Hammond and two other guards arrived at the bar, they heard Denney arguing with another patron, causing a disturbance. Hammond noticed Denney was showing signs of intoxication, so he tried to persuade him to go to a room in the casino

hotel to sleep it off, but Denney would not cooperate. IGC Agents Brian Pennock and Steve Faulkner also responded to the bar, but Belterra's policy was for security guards to try to resolve an incident before calling in IGC, so the agents initially stood back and observed Denney arguing with Hammond. As the situation escalated, food and beverage vendors asked security to remove Denney from the bar. Denney walked out of the bar yelling profanities, and the security guards and agents followed him out to the casino pavilion.

[3] Denney was upset and making noise in the pavilion, so the security guards again attempted to get him to go to a hotel room. He said he would leave the casino and walked away toward the parking garage, still yelling expletives and causing a scene. Concerned Denney would drive in his intoxicated state, the security guards and IGC agents followed him to the garage, maintaining a distance because he was being belligerent and threatening them. Security found Denney sitting down, hiding between two cars. As Hammond kept trying to persuade Denney to go to a room, Denney yelled that he was "going to f*ck [Hammond] up." Tr. p. 8. Seeing this as a threat to Hammond, Agent Pennock intervened and offered to escort Denney to a room, but Denney refused and yelled, "[Y]ou don't know who you are f*cking with." *Id.* Agent Pennock warned Denney to calm down, but Denney stood and said "f*ck you I'm not going to that h*ll hole, I'm leaving." *Id.* at 9. Denney started to move away, and Agent Pennock informed him he was under arrest for public intoxication. As he reached for Denney's arms, Denney lifted them up and "pulled away," so Agent Pennock "wasn't able to get ahold of [him] at that point." *Id.* at 25-26.

Agent Faulkner stepped in to assist Agent Pennock, and they managed to get ahold of Denney. While in the agents' grasps, Denney was "tightening up," but he stopped once they got him on the ground. *Id.* at 25. The agents handcuffed him and walked him to the IGC office.

[4] Denney was uncooperative in the office and told Agents Pennock and Faulkner they were "f*cking with the wrong person." *Id.* at 11. He gave them "some opportunities to remove his cuffs and to let him go," and after the agents advised him they would not do so, Denney threatened them and their families. *Id.* He said he knew members of "chapters," meaning motorcycle gangs, and that "[the agents'] wives, mothers and children would be done." *Id.* Agent Pennock called the Switzerland County Sheriff's Department to pick up Denney from Belterra, and deputies transported Denney to the county jail.

[5] The State charged Denney with Level 6 felony intimidation, Class A misdemeanor resisting law enforcement, Class B misdemeanor disorderly conduct, and Class B misdemeanor public intoxication. At the bench trial, Denney testified in his own defense. He claimed he was not being derogatory in the casino bar and didn't say anything to the other patrons. His theory was that someone had "slipped something into [his] drink" as part of a plan to rob him, but "their plan got foiled. And that's why they . . . said that [Denney] was being belligerent[.]" Tr. p. 60. In support of this theory, Denney testified that he did not take any drugs on the night of the incident and had never acted the way he did that night while intoxicated from alcohol. He said the guards at the jail told him they'd never seen that kind of behavior from alcohol and "they thought

there was a little bit more than alcohol." *Id.* at 58. Denney also claimed he went to the parking garage because security asked him to leave the casino, and he told them he would wait in the garage for his mom and sister to pick him up rather than driving himself. As to the events in the IGC office, Denney alleged the agents were "mocking [him], making fun of [him] because [he] had long hair and [he] looked like a gang member." *Id.* at 61. He admitted that he "played along with that," but that he doesn't actually know anybody in a gang or have any gang affiliation. *Id.*

[6] The trial court found Denney guilty on all counts and sentenced him to concurrent terms of eighteen months for intimidation, one year for resisting law enforcement, six months for disorderly conduct, and six months for public intoxication. The court suspended all but 120 days, which Denney was ordered to serve on home detention.

[7] Denney now appeals.

## Discussion and Decision

[8] Denney contends the evidence is insufficient to sustain his convictions. When reviewing sufficiency-of-the-evidence claims, we neither reweigh the evidence nor judge witness credibility. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from it. *Id.* We will affirm a conviction if there is substantial evidence of probative value to support each element of the offense

such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

# I. Intimidation

To convict Denney of Level 6 felony intimidation as charged here, the State had to prove he communicated a threat to law-enforcement officers, namely IGC Agents Pennock and Faulkner, with the intent that they engage in conduct against their will while "fulfilling their law enforcement duties and responsibilities of arrest." Appellant's App. Vol. II p. 31.[1] Denney claims there is no evidence that he threatened the agents with the requisite intent. But Agent Pennock testified that Denney asked them multiple times "to remove his cuffs and to let him go . . . [a]nd when [they] didn't do that, he then made a comment that he knows three (3) chapters and that [the agents'] wives, mothers and children would be done." Tr. p. 11. This testimony supports a reasonable inference that Denney threatened the agents with the intent that they release him from custody after they initially refused to do so. The evidence is sufficient to sustain Denney's intimidation conviction.

---

[1] Intimidation is governed by Indiana Code section 35-45-2-1. An amended version of this statute went into effect on July 1, 2019. *See* Pub. L. No. 66-2019 § 17. This version was in effect when Denney committed the offenses on July 27, 2019, but the State mistakenly charged him under the previous version. *See* Appellant's App. Vol. II p. 31. Specifically, the State charged Denney under Section 35-45-2-1(b)(1)(B)(i) of the previous version, which made intimidation a Level 6 felony if "the person to whom the threat is communicated . . . is a law enforcement officer" and "the threat is communicated to the person because of the occupation . . . or based on an act taken by the person within the scope of the occupation[.]" The new version doesn't include a subsection (b)(1)(B)(i), but it still makes intimidation a Level 6 felony if "the threat is communicated because of the occupation . . . of a person or the threat relates to or is made in connection with the occupation[.]" Denney does not raise any issue with this charging error on appeal.

## II. Resisting Law Enforcement

To convict Denney of resisting law enforcement as charged, the State had to prove he knowingly or intentionally forcibly resisted, obstructed, or interfered with Agents Pennock and Faulkner while they were lawfully executing their duties. I.C. § 35-44.1-3-1(a)(1); Appellant's App. Vol. II p. 12. Denney contends his acts of "turn[ing] to leave," "pull[ing] away" when Agent Pennock "tried to grab Denney's arm and missed," and "tighten[ing] up" when the agents had him on the ground did not constitute forcible resistance. Appellant's Br. p. 11. We agree. A person forcibly resists law enforcement when "'strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties.'" *Walker v. State*, 998 N.E.2d 724, 726-27 (Ind. 2013) (quoting *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993)). Even a modest exertion of strength, power, or violence may satisfy this element, *id.* at 727, but our Supreme Court has held that merely walking away from law enforcement, *Spangler*, 607 N.E.2d at 724, refusing to present arms for handcuffing, *Graham v. State*, 903 N.E.2d 963, 966 (Ind. 2009), or turning and pulling away from an officer's grasp, *K.W. v. State*, 984 N.E.2d 610, 611 (Ind. 2013), do not rise to the level of forcible resistance. *See also, e.g.*, *Runnells v. State*, 186 N.E.3d 1181, 1185 (Ind. Ct. App. 2022) ("pulling away from [the officer's] grasp"); *Brooks v. State*, 113 N.E.3d 782, 785 (Ind. Ct. App. 2018) ("tensing up and pulling away" as officers tried to handcuff her).

The State likens this case to *Johnson v. State*, 833 N.E.2d 516 (Ind. Ct. App. 2005). There, we found Johnson forcibly resisted by pushing away with his

shoulders as officers were searching him and stiffening up as they grabbed him to put him into the transport vehicle. But unlike Johnson, Denney did not push away from the agents, and he "pulled away" from Agent Pennock without making any contact with him.[2] Because the State failed to prove Denney acted forcibly, the evidence is insufficient to sustain his conviction for resisting law enforcement.

## III. Disorderly Conduct

[12] As to the charge of disorderly conduct, the State had to prove Denney recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. I.C. § 35-45-1-3(a)(2); Appellant's App. Vol. II p. 13. After receiving notice that Denney was being disruptive in the lobby bar, Hammond tried to persuade him to leave the bar and go to a hotel room, but Denney argued and continued "causing a disturbance." Tr. p. 33. As Denney was leaving the bar, "he yelled f*ck you" to "the folks that were still in the bar[.]" *Id.* at 5. Even after security repeatedly requested that Denney go to a room, Denney "was yelling some profanities" in the pavilion area and "became increasingly more belligerent" in the parking garage. *Id.* at 7, 36. When Agent Pennock approached Denney in the garage to persuade him to go to a room, Denney "yelled do you know who I am, you don't know who you are f*cking

---

[2] The State's reliance on *Johnson* centers around the fact that Johnson was yelling and cursing at officers as they arrested and searched him. Appellee's Br. p. 13. But the *Johnson* court's finding of forcible resistance was based on Johnson's physical means of resisting, not his accompanying words. *See Johnson*, 833 N.E.2d at 518-19. Although Denney threatened and yelled at officers, these outbursts do not make his physical actions forcible.

with." *Id.* at 8. Agent Pennock then "gave him a warning to calm down," but Denney "was yelling at [Pennock]" and "said, f*ck you I'm not going to that h*ll hole," Tr. pp. 8-9, 23. The evidence shows Denney continuously made unreasonable noise throughout the night and continued to do so even after Agent Pennock warned him to calm down. This is sufficient to support his conviction for disorderly conduct.

## IV. Public Intoxication

[13] To convict Denney of public intoxication as charged here, the State had to prove that he was in Belterra Casino Resort in a state of intoxication caused by his use of alcohol or a controlled substance and that he endangered his life or the life of another, breached the peace or was in imminent danger of breaching the peace, or harassed, annoyed, or alarmed another person. I.C. § 7.1-5-1-3(a); Appellant's App. Vol. II p. 14. The trial court "f[ound] beyond a reasonable doubt that [Denney] was intoxicated and breached the peace or was [in] imminent danger of breaching the peace." Tr. p. 70. Denney contends the State failed to prove he breached the peace or was in imminent danger of doing so. He cites *Milam v. State*, 14 N.E.3d 879 (Ind. Ct. App. 2014), where we found the evidence that Milam was in a pulled-over car and argued with another passenger and the arresting officer insufficient to meet the requirements of the public-intoxication statute. The State likens this case to *Ruiz v. State*, 88 N.E.3d 219 (Ind. Ct. App. 2017). There, we held the trial court reasonably inferred Ruiz was in imminent danger of breaching the peace when he was yelling at residents of his apartment complex, officers had to respond to the scene three

separate times, and he was uncooperative with the officers. This case is more like *Ruiz*; Denney caused a disturbance while arguing with another patron in the casino bar, IGC agents had to intervene after Denney refused to cooperate with the security guards, and Denney was continuously hostile and belligerent toward the security guards and agents. The trial court reasonably inferred Denney breached or was in imminent danger of breaching the peace.[3]

[14] Affirmed in part and reversed in part.

Mathias, J., and Pyle, J., concur.

---

[3] Denney also contends his convictions for both disorderly conduct and public intoxication constitute double jeopardy under *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020). He claims the convictions "fall afoul of the 'single transaction' test" because they "rest on the same conduct." Appellant's Br. p. 13. But Denney comes to this conclusion without actually applying the steps of the *Wadle* test. *See Garth v. State*, 183 N.E.3d 905, 920 (Ind. Ct. App. 2022) (citations omitted) ("The first step is to determine whether the statutes . . . allow for multiple punishments . . . . If the statutes are unclear, we apply our included-offense statutes. If either offense is included in the other, . . . we then consider whether the defendant's actions . . . 'constitute a single transaction.'"), *trans. denied*. Because Denney fails to develop an argument under this test, he has waived any double-jeopardy claim. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning.").