929 N.E.2d 907 (2010)
A.C., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 49A04-0912-JV-682.
Court of Appeals of Indiana.
July 7, 2010.
Ruth Johnson, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
CRONE, Judge.
A.C. appeals his adjudication as a delinquent child for committing an act that would be considered class A misdemeanor resisting law enforcement if he were an adult. He argues that there is insufficient *908 evidence to support the true finding that he committed resisting law enforcement. We agree and reverse his adjudication.
The facts most favorable to the adjudication show that on September 21, 2009, Indianapolis Metropolitan Police Officer Richard Stratman was dispatched to the lobby of the IMPD North District Headquarters regarding the recovery of a runaway juvenile. When Officer Stratman arrived in the lobby, A.C. was present with his mother. Officer Stratman asked A.C. some questions, but A.C. was unresponsive. Officer Stratman told A.C. to stand up, but "he refused to stand up. By just maintaining silence, not saying anything, not looking at [Officer Stratman]. So, [Officer Stratman] grabbed him by his ... right arm, lifted him up and placed him into handcuffs." Tr. at 3. Officer Stratman noticed that A.C.'s pants were "sagging down below his waist, almost to his knees." Id. Officer Stratman then uncuffed A.C. and asked him to pull his pants up. A.C. stood silent. Officer Stratman took a belt loop on the right side of A.C.'s pants and made an attempt to lift his pants up. A.C. "began to pull away a little bit and then with his left hand, suddenly pulled his left part of his pants back down[.]" Id. As Officer Stratman described it,
[A.C.] shifted his body weight away from me and more towards the chairs and his mother..... [A.C.] started to pull his weight and his body, kind of suddenly over to his left side, away from me and I grabbed [A.C.] by his arm and he kind of continued to lean his weight and at which time I then put [A.C.] in the handcuffs and secured him. And I then walked [A.C.] over to his mother and she pulled his pants up for him.
Id. at 4. As Officer Stratman led A.C. to see the medics for treatment of an arm injury, A.C. said, "Get off of me," and "just kind of leaned his weight and kinda pull[ed] away from [Officer Stratman's] grasp." Id. at 5. "At no time did [A.C.] push, hit, kick, or slap the Officer. Further, [A.C.] never displayed any intent to do any violence toward the officer." Appellant's Br. at 5 (citing Tr. at 7).
On September 22, 2009, the State submitted a delinquency petition to the juvenile court, alleging that A.C. committed what would be class A misdemeanor resisting law enforcement if committed by an adult. The juvenile court approved the delinquency petition and ordered its filing the same day. On October 19, 2009, the juvenile court held a denial hearing. A.C. moved to have the matter involuntarily dismissed. See Ind. Trial Rule 41(B) (providing that, after party with burden of proof has completed presentation of evidence, opposing party may move for dismissal on ground that upon the weight of the evidence and the law there has been shown no right to relief). The trial court denied the motion and entered a true finding against A.C. for class A misdemeanor resisting law enforcement if committed by an adult. On October 21, 2009, A.C. filed a motion to reconsider, upon which the juvenile court did not rule.
On November 12, 2009, the juvenile court held the disposition hearing. The juvenile court committed A.C. to the Department of Correction, but suspended the commitment and placed A.C. on probation with special conditions.[1] A.C. appeals.
A.C. argues that the evidence is insufficient to support his delinquency adjudication for committing what would be considered class A misdemeanor resisting law enforcement if he were an adult. When the State seeks to have a juvenile adjudicated as a delinquent child for committing *909 an act that would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. J.S. v. State, 843 N.E.2d 1013, 1016 (Ind.Ct.App.2006), trans. denied. In reviewing a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication. Id.
To obtain an adjudication for resisting law enforcement, the State was required to prove beyond a reasonable doubt that A.C. did knowingly or intentionally "[f]orcibly resist, obstruct, or interfere with a law enforcement officer ... while the officer [was] engaged in the execution of his duties as an officer." Ind.Code § 35-44-3-3; Appellant's App. at 14. A.C. asserts that the evidence is insufficient to establish the element of forcible resistance.
For the last seventeen years, Indiana courts have cited Spangler v. State, 607 N.E.2d 720 (Ind.1993) for the following definition of forcible resistance: "One `forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." Id. at 723 (emphasis added). Recently in Lopez v. State, 926 N.E.2d 1090 (Ind.Ct.App.2010), trans. pending, we recognized that the definition of forcible resistance as set forth in Spangler and its actual application in subsequent cases are not in perfect harmony:
We observe that "forcibly" modifies "resists, obstructs, and interferes," which at first blush would seem to require that a person use some force beyond that which would be required if "forcibly" did not modify "resists, obstructs, and interferes." Indeed, our supreme court has stated,
A correct interpretation of [Indiana Code Section 35-44-3-3] requires us to give meaning to the word "forcibly," because the legislature included the word in the statute. In order to sustain the conviction, the State must have proven not only that [the defendant] resisted, but that he forcibly resisted, because the modifying word "forcibly" is within that section of the statute. "Forcibly" is a required element of the crime[.]
[Spangler, 607 N.E.2d at 723.] According to the Spangler court, the "appropriate meaning" of "forcibly" as used in Indiana Code Section 35-44-3-3 is as follows: "One `forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." Id. (emphasis added).
Nevertheless, Indiana jurisprudence indicates that the amount of force required to convict a person of resisting law enforcement is not as great as one would expect under the language in Spangler. In Johnson v. State, 833 N.E.2d 516 (Ind.Ct.App.2005), another panel of this Court stated that it "may have moderated the definition of `forcibly resist' as it was written in Spangler [,]" and noted that "until we are instructed otherwise by our Supreme Court, we see no reason to apply what appears to be an overly strict definition of forcibly resist[.]" Id. at 519; see also J.S. v. State, 843 N.E.2d 1013, 1017 (Ind. Ct.App.2006) (noting that Indiana courts had not applied an overly strict definition of "forcibly resist"), trans. denied.

*910 Last year, our supreme court revisited the meaning of "forcibly" as used in Indiana Code Section 35-44-3-3. In Graham v. State, 903 N.E.2d 963 (Ind. 2009), the supreme court made the following observations:
This Court's opinion in Spangler [ ] examined the elements of the crime of resisting. Justice DeBruler noted that the word "forcibly" modifies "resists, obstructs, or interferes" and that force is an element of the offense. He explained that one "forcibly resists" when "strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." [607 N.E.2d at 723]. Spangler had refused to accept service of process from an officer, walking away from the officer in the face of demands that he accept a protective order. This Court held that such action was resistance to authority but not "forcible" resistance. "It is error as a matter of law to conclude," we said, "that `forcibly resists' includes all actions that are not passive." Id. at 724. Spangler's conviction was reversed.
The force involved need not rise to the level of mayhem. In Johnson [ ], a defendant in custody "pushed away with his shoulders while cursing and yelling" when the officer attempted to search him. As officers attempted to put him into a police vehicle, Johnson "stiffened up" and the police had to get physical in order to put him inside. [833 N.E.2d at 517]. The Court of Appeals correctly held that Johnson's actions constituted forcible resistance.

Id. at 965-66.
Thus, in Graham, the supreme court approved of the language used in Spangler to define "forcibly resist," while simultaneously approving of the holding in Johnson. Although the Graham court acknowledged that the resistance described in Johnson was "modest," id. at 966, the Graham court apparently overlooked the Johnson court's explicit acknowledgement that it was modifying the language of Spangler. Accordingly, we are somewhat hesitant to rely on Spangler's strong language because it does not appear to adequately describe the meaning of "forcibly resist" as it has been applied. However, based on the fact-sensitive nature of these cases, a simple comparison of the facts of this case with those of previous cases will lead us to a just result.
Id. at 1092-93.
It bears repeating that the defendant's resistance in Johnson, though subsequently described as "modest" by our supreme court in Graham, was held to be forcible resistance. Graham, 903 N.E.2d at 966. The Graham court reversed the defendant's conviction for resisting law enforcement because it concluded that "a fair reading of the evidence in this case does not reflect even the modest level of resistance described in Johnson." Id. In Graham, the police were attempting to arrest Graham at his house. Graham was on the porch, yelling obscenities at the police and refusing their requests to put his hands up. When it looked as though Graham was going back inside the house, possibly to get a shotgun, the police fired "bean bag rounds" at his legs "to bring him down." Id. at 965. The officers then carried Graham off the porch and ordered him to present his arms for cuffing, which he refused to do. The officers laid Graham on the ground on his belly, put his arms behind his back, and handcuffed him. Id. The Graham court confirmed it prior declaration that "[i]t is error as a matter of law to conclude ... that forcibly resists *911 includes all actions that are not passive.'" Id. (quoting Spangler, 607 N.E.2d at 724).
Relying on Graham, we recently reversed a resisting law enforcement conviction based on insufficient evidence. In Colvin v. State, 916 N.E.2d 306 (Ind.Ct. App.2010), trans. denied, police officers executed a search warrant on an apartment, and Colvin was in the living room. "One of the officers ordered Colvin to take his hands out of his pockets, but Colvin did not comply. Colvin refused to comply with any of the officers' commands, and the officers physically had to place him on the ground and handcuff him." Id. at 307 (quotation marks omitted). The Colvin court found that the evidence did not support a reasonable inference that Colvin did more than passively resist. Id. at 309. The Colvin court noted that the "officers testified only that Colvin was not complying with the officers' commands and that the officers had to use force to execute the arrest" and that there was "no evidence that Colvin stiffened his arms or otherwise forcibly resisted the officers." Id. (emphases in original).[2]
Here, there is even less evidence of forcible resistance than in either Graham or Colvin. See also Berberena v. State, 914 N.E.2d 780, 782 (Ind.Ct.App.2009) (holding that evidence was ambiguous as to whether defendant forcibly resisted where Officer "struggled with" defendant "to grab his hands and place him in handcuffs" but Officer did not recall what defendant was doing with his hands but only that he, the officer, "forcibly placed" defendant's hands in handcuffs), trans. denied; Braster v. State, 596 N.E.2d 278, 280 (Ind.Ct.App.1992) (holding that evidence was insufficient to support a resisting law enforcement conviction where defendant refused to obey commands and officer had to "sweep" defendants legs out from under him, but no evidence of force on defendant's part), trans. denied. We observe that although A.C. did not stand up when asked, Officer Stratman pulled him to his feet without resistance. A.C.'s simple failure to stand, without more, amounts to passive inaction and seems analogous to the failure to present one's arms for handcuffing, which our supreme court has said does not constitute forcible resistance.[3]See Graham, 903 N.E.2d at 966. As Officer Stratman pulled up A.C.'s pants, A.C. leaned away. A.C. then pulled the left side of his pants back down. We fail to see how these actions constitute forceful resistance to the performance of Officer *912 Stratman's duties. See Graham, 903 N.E.2d at 965 ("`It is error as a matter of law to conclude ... that forcibly resists includes all actions that are not passive.'") (quoting Spangler, 607 N.E.2d at 724). To the contrary, we observe that Officer Stratman handcuffed A.C. two times, and there is no evidence that Officer Stratman had to struggle to handcuff A.C. Indeed, there is no evidence that Officer Stratman experienced any difficulty whatsoever in handcuffing A.C. In addition, although A.C. leaned away from Officer Stratman when he was leading him to see the medics, there is no evidence that Officer Stratman had to struggle or get physical to successfully perform this task. While A.C.'s conduct may have justified a physical response from the officer, that does not equate to criminal conduct as to A.C. under the supreme court's current definition of resisting law enforcement. We conclude that the evidence is insufficient to establish beyond a reasonable doubt that A.C. committed resisting law enforcement. Accordingly, we reverse his delinquency adjudication.
Reversed.
BAKER, C.J., and DARDEN, J., concur.
NOTES
[1] Probation was to end March 12, 2009.
[2] Colvin shows that even though police officers may have to use force to effectuate an arrest, the officers' use of force, in itself, does not establish that the defendant forcibly resisted.
[3] The State asserts that "there is case authority that would hold that A.C.'s failure to stand when ordered by the officer constituted forcible resistance because his actions required the officer to lift him to his feet." Appellee's Br. at 5. In support, the State cites McCaffrey v. State, 605 N.E.2d 241 (Ind.Ct.App. 1992). We disagree that McCaffrey stands for the proposition that the mere failure to stand when ordered constitutes forcible resistance. In McCaffrey, the defendant not only refused to leave the squad car, but he also "pulled his legs up so the officers were forced to use extraordinary effort to remove him from the car to effectuate his lawful arrest." Id. at 243. The State also cites Guthrie v. State, 720 N.E.2d 7 (Ind.Ct.App.1999), trans. denied (2000), and Wellman v. State, 703 N.E.2d 1061 (Ind.Ct.App. 1998). In Guthrie, the defendant "resisted the officers' efforts by leaning his body back and stiffening his legs." 720 N.E.2d at 9. In Wellman, the defendant physically resisted leaving his house by placing his hands against the door frame, and once outside, the defendant dropped to his knees and told the officer that he would have to drag him to the police car. 703 N.E.2d at 1062. In both cases, the defendant did more than merely refuse to stand, and therefore neither case supports the State's proposition.