**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 28 2014, 9:15 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUSY ST. JOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MONISHA RHODES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1312-CR-1068 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION COUNTY SUPERIOR COURT #8
The Honorable Amy Jones, Judge
Cause No. 49F08-1310-CM-068438

**August 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a bench trial, Monisha Rhodes was convicted of Resisting Law Enforcement[1] as a class A misdemeanor. Rhodes challenges the sufficiency of the evidence supporting her conviction as the sole issue on appeal.

We affirm.

At approximately 1:40 a.m. on October 19, 2013, Officer Darryl Miller of the Indianapolis Metropolitan Police Department was dispatched to 406 Harvard Place in Marion County to assist medical personnel with a possible robbery victim. Upon arrival, Officer Miller knocked on the door at 406 Harvard Place, but there was no response. Officer Miller observed that the front window of the residence had a large hole in it and that there were traces of blood and a pair of women's shoes on the front porch.

As he approached 406 Harvard Place, Officer Miller had noticed a woman sitting on the screened-in porch at 410 Harvard Place, a neighboring residence. That woman was no longer visible, but a second woman at 410 Harvard Place opened the front door to that residence, and Officer Miller walked over to speak with her. As Officer Miller entered the screened-in porch at 410 Harvard Place, he noticed Rhodes lying on the floor of the porch as if she were unconscious. Officer Miller noted that Rhodes appeared to be "very intoxicated" and that her arms were scratched and bloody. *Transcript* at 7. Rhodes did not respond to Officer Miller when he tried to rouse her.

The medics arrived and also attempted to rouse Rhodes. It was determined that Rhodes was not unconscious. The medics first attempted to take Rhodes's vital signs

---

[1] Ind. Code Ann. § 35-44.1-3-1(a)(1) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).

2

and, at least initially, Rhodes cooperated with the medics. Rhodes then began shaking all over and moving her eyes from side to side. At the same time, however, Rhodes was answering questions. The medics told Rhodes to stop shaking and moving her eyes, and Rhodes complied. When the medics helped Rhodes stand up so they could get her on the cot, Rhodes suddenly became "very belligerent and angry" and started swinging at the medics. *Id.* at 11. Officer Miller stepped in to assist the medics and grabbed one of Rhodes's arms while an assisting officer grabbed her other arm. Rhodes began "screaming very violently" and the officers had to wrestle her to her knees to be handcuffed. *Id.* Rhodes physically pulled away from the officers causing one of the officers to lose his grip on her arm. Rhodes would not allow the officers to take control of her arms and kept trying to move her arms in front of her body to prevent the officers from putting her in handcuffs. It took the officers approximately fifteen seconds to get Rhodes under control and place her in handcuffs.

On October 21, 2013, the State charged Rhodes with resisting law enforcement as a class A misdemeanor and criminal mischief as a class B misdemeanor.[2] A bench trial was held on December 4, 2013, at the conclusion of which the trial court found Rhodes guilty of resisting law enforcement. The same day, the trial court sentenced Rhodes to 1 year in the Marion County Jail with 271 days suspended and credit for 47 days she spent incarcerated prior to sentencing.

---

[2] The trial court granted the State's motion to dismiss the criminal mischief charge prior to trial.

On appeal, Rhodes argues that the evidence is insufficient to sustain her conviction for resisting law enforcement. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a claim that the evidence introduced at trial was insufficient to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt. We likewise consider conflicting evidence in the light most favorable to the trial court's finding. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. Instead, we will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt.

*Gray v. State,* 957 N.E.2d 171, 174 (Ind. 2011). When considering a challenge to the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. *Turner v. State,* 953 N.E.2d 1039 (Ind. 2011).

Rhodes contends that the evidence is not sufficient to prove the "forcibly" element set out in I.C. § 35-44.1-3-1(a)(1), which provides, "A person who knowingly or intentionally . . . *forcibly* resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor[.]" (emphasis supplied). With respect to the "forcibly" element, this court has stated:

> the term "forcibly" modifies "resists, obstructs, or interferes." *Spangler v. State,* 607 N.E.2d 720, 723 (Ind. 1993). Thus, the word "forcibly" is a word descriptive of the type of resistance proscribed by law, and "[r]esistance, obstruction, or interference with force is the action the statute addresses." *Id.* One "forcibly resists" law enforcement when "strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of duties." *Id.* However, the force necessary to sustain a conviction need not rise to the level of mayhem, and our supreme court has acknowledged that a "modest level of resistance" may suffice. *Graham v.*

4

*State,* 903 N.E.2d 963, 965 (Ind. 2009) (citing *Johnson v. State,* 833 N.E.2d 516, 517 (Ind. Ct. App. 2005)).

*Stansberry v. State*, 954 N.E.2d 507, 510-11 (Ind. Ct. App. 2011). Forcible resistance "should not be understood as requiring an overwhelming or extreme level of force. The element may be satisfied with even a modest exertion of strength, power, or violence." *Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013).

As recently recognized by our Supreme Court, there is no strict bright-line test for whether a defendant acts "forcibly." *Walker v. State*, 998 N.E.2d 724. Rather, appellate courts consider the facts of each case and then place them "along a spectrum of force, though often with the facts varying only by slight degrees." *Id*. at 727. Our Supreme Court has acknowledged that the fact-sensitive nature of such cases leads to "a degree of unpredictability in outcome, for both the defendant and the State." *Id*. at 727-28.

A survey of previous cases shows that merely walking away from a law-enforcement encounter, *see, e.g., Spangler v. State,* 607 N.E.2d 720 (Ind. 1993), leaning away from an officer's grasp, *see, e.g., A.C. v. State,* 929 N.E.2d 907 (Ind. Ct. App. 2010), or "twisting and turning 'a little bit' " against an officer's actions, *see, e.g., Ajabu v. State,* 704 N.E.2d 494, 495-96 (Ind. Ct. App. 1998), do not establish "forcible" resistance. On the other hand, pushing away from an officer with one's shoulders while cursing and yelling while the officer is attempting to conduct a search of one's person and then "stiffen[ing] up" when officers tried to put him in a police vehicle does constitute forcible resistance. *See Johnson v. State*, 833 N.E.2d 516, 517 (Ind. Ct. App. 2005).

5

In *McCaffrey v. State*, 605 N.E.2d 241 (Ind. Ct. App. 1992), the defendant refused to obey officers' orders to stand and had to ultimately be carried to the police car by two police officers. Upon arrival at the jail, the defendant refused to exit the police car and pulled his legs up and would not put them down. This court held that the defendant's actions were not a mere passive refusal to act; rather, the defendant's refusal to leave the police car or to put his feet on the ground constituted sufficient force to sustain his conviction for resisting law enforcement. In *Stansberry v. State*, 954 N.E.2d 507, the act of placing one's hands on the casing of a doorway to resist leaving the house was found to be sufficient force to support a conviction of resisting law enforcement.

In the present case, Rhodes pulled away from one of the officers such that the officer lost his grip on her arm. Breaking an officer's grasp requires exerting at least as much force as pushing away or stiffening up. *See Johnson v. State*, 833 N.E.2d 516. Moreover, in response to the officers' attempts to place Rhodes in handcuffs, Rhodes straightened her arms and tried to tuck them under herself. This is similar to pulling up one's legs, *see McCaffrey v. State*, 605 N.E.2d 241, or holding on to a doorframe to prevent oneself from being handcuffed. *See Stansberry*, 954 N.E.2d 507. Indeed, Rhodes used such force that it took two police officers approximately fifteen seconds to get control of her arms and place her in handcuffs. The facts of this case sufficiently establish that Rhodes forcibly resisted the officers.

Contrary to Rhodes's claim on appeal, the outcome in this case is not dictated by the result reached in *K.W. v. State*, 984 N.E.2d 610 (Ind. 2013). In *K.W.*, the juvenile "merely . . . 'began to resist and pull away,' or 'turned, [and] pulled away.'" *Id*. at 612.

6

The Court held that nothing in the description of the incident suggested that the juvenile exerted any strength, power, or violence "beyond what is inherent in taking a step away." *Id*. at 613. As noted above, Rhodes's actions fall farther on the side of the continuum for forceful resistance. Rhodes pulled her arm away from the officer such that one officer lost his grasp on her arm. Rhodes then continued using force against the officers by straightening her arms and trying to prevent the officers from placing her in handcuffs by hiding her arms underneath her. The facts support the trial court's determination that Rhodes knowingly or intentionally forcibly resisted a law enforcement officer while the officer was lawfully engaged in the execution of the officer's duties. We therefore conclude that the evidence is sufficient to support Rhodes's conviction for resisting law enforcement as a class A misdemeanor.

Judgment affirmed.

VAIDIK, C.J., and MAY, J., concur.