


FILED

Dec 18 2024, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

Vanessa Manuel,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

December 18, 2024

Court of Appeals Case No.
24A-CR-1250

Appeal from the Boone Circuit Court

The Honorable Lori N. Schein, Judge

Trial Court Cause No.
06C01-2212-F6-2284

**Opinion by Judge Bradford**
Judges Weissmann and Kenworthy concur.

**Bradford, Judge.**

# Case Summary

[1]     Boone County Sheriff's Deputy Jeffery Dixon encountered Vanessa Manuel on December 17, 2022, after her vehicle had run out of fuel in the middle of the roadway. When Deputy Dixon approached the stalled vehicle, he observed that Manuel had a firearm, which she attempted to conceal in the driver's side door. Manuel reached for the firearm when Deputy Dixon inquired as to why she had tried to conceal it. She then ignored Deputy Dixon's instructions for her to stop reaching for the firearm and grabbed it with her left hand. Manuel also failed to comply with Deputy Dixon's instructions to drop the firearm. Deputy Dixon eventually disarmed Manuel, at which time he discovered that the firearm, which had an extended magazine, had been loaded.

[2]     Manuel was eventually charged with, and convicted of, Level 6 felony resisting law enforcement, Class A misdemeanor driving while suspended, and Class B misdemeanor possession of marijuana. She was subsequently sentenced to an aggregate 365-day suspended sentence. Manuel contends on appeal that the evidence is insufficient to sustain her conviction for resisting law enforcement. Because Manuel forcibly used a firearm by grabbing it while resisting, obstructing, or interfering with Deputy Dixon in the performance of his lawful duties, we affirm.

# Facts and Procedural History[1]

On December 17, 2022, Deputy Dixon was dispatched to State Road 32 and County Road 1200 East in Boone County to respond to a report "of somebody being out of gas in the middle of the road." Tr. Vol. II p. 39. When Deputy Dixon arrived, his mission was to assist Manuel in removing her disabled vehicle from the lane of traffic and to ensure safe travel on the roadway. Manuel, the driver and sole occupant of the vehicle, had previously declined an offer from a bystander to be pushed off the roadway. As the fully-uniformed Deputy Dixon approached Manuel's vehicle, he observed her "attempting to stuff something down into the pocket on the driver's side door." Tr. Vol. II p. 53. Deputy Dixon determined that the item in question was a firearm.

Once both of her hands were in view, Deputy Dixon asked Manuel "why she was trying to hide" the firearm before ordering her to step out of the vehicle. Tr. Vol. II p. 41. Manuel leaned down to the left as if reaching for the firearm. Deputy Dixon told Manuel "nope, don't reach again for it" and "nope, nope, nope." State's Ex. 3 at 00:32. Deputy Dixon instructed Manuel to exit the vehicle. As he opened the driver's-side door, Manuel "reached for the firearm and tried to pull it." Tr. Vol. II p. 41. Deputy Dixon instructed Manuel to "drop the gun" three times and "slammed both of her hands into the side of her

---

[1] We held oral argument in this case at Muncie Central High School on December 2, 2024. We thank the faculty, students, and staff of Muncie Central for their warm hospitality and commend counsel for the quality of their arguments.

driver['s] seat to prevent her from" pointing the firearm at him. Tr. Vol. II pp. 41–42. Deputy Dixon drew his service weapon, disarmed Manuel, and placed her firearm "underneath [his] right arm and held her at gunpoint while requesting" assistance from other law-enforcement officers. Tr. Vol. II p. 46.

Once the other officers arrived, Manuel was removed from her vehicle, handcuffed, and searched. Deputy Dixon discovered that Manuel's firearm had "an extended magazine that was in the firearm, and it was loaded with twenty-eight rounds. One of them being in the chamber." Tr. Vol. II p. 52. A subsequent search of Manuel's vehicle uncovered 200 grams of marijuana and a second magazine for the firearm. Deputy Dixon also learned that Manuel's driver's license had been indefinitely suspended. After being read her *Miranda*[2] rights, Manuel claimed to have acted "in self-defense." Tr. Vol. II p. 49.

On December 19, 2022, the State charged Manuel with Level 6 felony resisting law enforcement, Class A misdemeanor driving while suspended, and Class B misdemeanor possession of marijuana. Following a bench trial, the trial court found Manuel guilty as charged. The trial court sentenced Manuel to an aggregate 365-day sentence with credit for time served and the remainder suspended to probation.

## Discussion and Decision

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (internal brackets, citations, quotations, emphasis, and footnote omitted). Stated differently, in reviewing the sufficiency of the evidence, "we consider only the evidence and reasonable inferences most favorable to the convictions, neither reweighing evidence nor reassessing witness credibility" and "affirm the judgment unless no reasonable factfinder could find the defendant guilty." *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016).

A person who knowingly or intentionally "forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties" commits resisting law enforcement. Ind. Code § 35-44.1-3-1(a)(1) The offense is a Level 6 felony if "while committing the offense, the person: (i) draws or uses a deadly

weapon." Ind. Code § 35-44.1-3-1(c)(1)(B). With regard to what level of force is necessary to sustain a conviction for resisting law enforcement,

> [o]ur supreme court held that any action to resist must be done with force. *Spangler v. State*, 607 N.E.2d 720, 724 (Ind. 1993) (reversing defendant's conviction for resisting law enforcement because there was insufficient evidence of force where defendant merely resisted service of process by vehemently refusing to accept service and turning and walking away). "[O]ne 'forcibly resists' law enforcement when *strong, powerful, violent* means are used to evade a law enforcement official's rightful exercise of his or her duties." *Id.* at 723 (emphasis added). The forcible resistance element requires "some form of violent action toward another." *Id.* at 724. "It is error as a matter of law to conclude that 'forcibly resists' includes all actions that are not passive." *Id.* "The force involved need not rise to the level of mayhem." *Graham v. State*, 903 N.E.2d 963, 965 (Ind. 2009). Indeed, "turn[ing] [and] pull[ing] away" from a law enforcement encounter, *K.W. v. State*, 984 N.E.2d 610, 612–13 (Ind. 2013), leaning away from an officer's grasp, *A.C. v. State*, 929 N.E.2d 907, 912 (Ind. Ct. App. 2010), refusing to present arms for handcuffing, *Graham*, 903 N.E.2d at 966, "twisting and turning 'a little bit' " against an officer's actions, *Ajabu v. State*, 704 N.E.2d 494, 495–96 (Ind. Ct. App. 1998), or walking away from a law enforcement encounter, *Spangler*, 607 N.E.2d at 724, do not establish forcibly resisting law enforcement.

*Brooks v. State*, 113 N.E.3d 782, 784–85 (Ind. Ct. App. 2018) (first set of brackets added, emphasis and other sets of brackets in original).

[9]     In arguing that the evidence is insufficient to sustain her conviction, Manuel claims that "the evidence does not show that [she] forcibly resisted, obstructed, or interfered with Deputy Dixon's duties." Appellant's Br. p. 5. Specifically,

Manuel asserts that "[t]he State failed to prove beyond a reasonable doubt that Manuel resisted at all, let alone forcibly." Appellant's Br. p. 6. We disagree.

[10] The Indiana Supreme Court has "never held that actual physical contact between the defendant and the officer has been required to sustain a conviction for resisting law enforcement." *Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013). In fact, the Indiana Supreme Court has stated "just the opposite[,]" acknowledging that "this notion has been applied to affirm convictions when a defendant makes such a threatening gesture or movement, or otherwise presents an imminent danger of bodily injury." *Id.*

> So in summary, not every passive—or even active—response to a police officer constitutes the offense of resisting law enforcement, even when that response compels the officer to use force. Instead, a person "forcibly" resists, obstructs, or interferes with a police officer when he or she uses strong, powerful, violent means to impede an officer in the lawful execution of his or her duties. But this should not be understood as requiring an overwhelming or extreme level of force. The element may be satisfied with even a modest exertion of strength, power, or violence. Moreover, the statute does not require commission of a battery on the officer or actual physical contact—whether initiated by the officer or the defendant. It also contemplates punishment for the active *threat* of such strength, power, or violence when that threat impedes the officer's ability to lawfully execute his or her duties.

*Id.* (emphasis in original).

[11] In *Walker*, the Indiana Supreme Court found that aggressively advancing on the arresting officer with fists clenched and raised was sufficient to establish an

active threat to impede the arresting officer's ability to lawfully execute his duties. *Id.* at 728. Similarly, in *Pogue v. State*, 937 N.E.2d 1253, 1258 (Ind. Ct. App. 2010), *trans. denied*, we concluded that

> Pogue's act of displaying the box cutter throughout his interaction with [the arresting officer] coupled with his refusal to drop the box cutter when instructed to do so amounted to a visual showing of strength and a threat of violence which was sufficient to prove that Pogue forcibly resisted, obstructed, or interfered with the rightful exercise of [the arresting officer's] official police duties.

Relying on our opinion in *Pogue*, the State argues that the "facts are similar here, and the result" should be the same. Appellee's Br. p. 11.

[12] We have little hesitation in concluding that the evidence is sufficient to prove that Manuel forcibly resisted, obstructed, or interfered with Deputy Dixon as he attempted to assist Manuel to move her disabled vehicle from the roadway, where it had been blocking traffic. Again, Manuel reached for and grabbed a firearm after being instructed not to. Manuel then ignored Deputy Dixon's instruction to drop the firearm. The act of reaching for and "attempting to pull" a loaded firearm is undoubtedly more serious than advancing on officers with one's fists clenched or displaying and refusing to drop a box cutter. Consistent with the Indiana Supreme Court's decision in *Walker* and our decision in *Pogue*, the evidence presented in this case is sufficient to prove forcible resistance, obstruction, or interference.

[13] Furthermore, we are also unconvinced by Manuel's claim that the evidence is insufficient to prove the Level 6 felony enhancement, *i.e.*, that she drew or used a deadly weapon during the commission of the act. *See* Ind. Code § 35-44.1-3-1(c)(1)(B). Seemingly acknowledging that she had possessed the firearm, Manuel asserts that mere possession of a firearm and using said firearm are two different things. The evidence before the trial court, however, establishes that Manuel did more than merely possess the firearm.

[14] When Deputy Dixon asked Manuel "why she was trying to hide" the firearm, Manuel leaned down to the left as if she were reaching for the firearm. Tr. Vol. II p. 41. Then, when Deputy Dixon instructed Manuel "nope, don't reach again for it[,]" State's Ex. 3 at 00:32, Manuel "reached for the firearm and tried to pull it[.]" Tr. Vol. II p. 41. Once holding the firearm, Manuel again ignored Deputy Dixon's instruction to drop the firearm. Manuel actively reached for, grabbed, and held onto the firearm. Deputy Dixon testified that it appeared that Manuel had been trying to "pull" the firearm on him before he disarmed her. Tr. Vol. II p. 41. Based on these facts, we have little trouble concluding that Manuel used the firearm during her act of forcibly resisting Deputy Dixon. The fact that Deputy Dixon acted quickly to disarm Manuel and to de-escalate the dangerous situation does not change the fact that Manuel grabbed and

pulled a loaded firearm from a nearby location, *i.e.*, the driver's-side door compartment, and briefly brandished the weapon.[3]

[15] The judgment of the trial court is affirmed.

Weissmann, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Riley L. Parr
Lebanon, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Jodi Kathryn Stein
Andrew M. Sweet
Deputy Attorneys General
Indianapolis, Indiana

---

[3] Indiana Code section 35-44.1-3-1(c)(1)(B) enhances a resisting-law-enforcement conviction to a Level 6 felony if the person "draws or uses a deadly weapon." Recognizing that a firearm is merely one type of potentially deadly weapon, we need not address the question of whether one can use a firearm independently from drawing it. Needless to say, in this case, Manuel used the firearm when she attempted to pull it on Deputy Dixon.