



FILED

Sep 29 2025, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Antoinette McNary,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

September 29, 2025

Court of Appeals Case No.
25A-CR-781

Appeal from the Marion Superior Court

The Honorable Clark H. Rogers, Judge
The Honorable Steven J. Rubick, Magistrate

Trial Court Cause No.
49D25-2411-CM-32012

**Opinion by Judge DeBoer**
Chief Judge Altice and Judge Pyle concur.

**DeBoer, Judge.**

## Case Summary

[1] Antionette McNary appeals her conviction for resisting law enforcement, arguing that there was insufficient evidence to prove that she forcibly resisted arrest. Finding that there was not sufficient evidence, we reverse and remand to the trial court with instructions to enter a judgment of acquittal.

## Facts and Procedural History

[2] On November 7, 2024, officers were dispatched to McNary's home in response to a report of a domestic disturbance. When they arrived, McNary's husband told them that she had hit him and showed them an injury on the top of his head. The officers determined they had probable cause to arrest McNary for domestic battery.

[3] When they informed McNary that she was under arrest, she said "I'm not going to jail." State's Exhibit 1A at 3:38.[1] She then walked from the living room, where she had been speaking with officers, into a bedroom. There, she stood between a dresser and the wall, and said, among other things, "do not f****** touch me," "I'm not going to jail for him," "I did not do anything," and

---

[1] The audio and video from the arresting officer's body-worn camera admitted into evidence as State's Ex. 1A and State's Ex. 1B are not synced, such that the video lags several seconds behind the audio. Throughout this opinion, when citing these exhibits for something said by McNary or the officers, we have provided the time when their statements can be heard. When citing what was done by McNary or the officers, we have provided the time when their actions can be observed.

"this some [sic] bull s***."[2]  *Id.* at 3:40-4:10.  An officer gave her several instructions to place her hands behind her back, but she did not do so.

[4]    The officer grabbed McNary's left wrist and elbow, pulled her away from the wall, and handcuffed her hands behind her back.  State's Ex. 1B at 0:12-0:46.  According to the officer, as he placed her in handcuffs "she was pulling against [him] trying to force her hand away from [him] until [he] was able to place her hand behind her back in which she then finally cooperated."  Transcript at 23.

[5]    Once she was handcuffed, the officer grabbed McNary's left arm and led her out of the house through the front door at which time she began yelling at her husband, who was standing outside.  State's Ex. 1B at 0:50-1:02.  At the same time, she tried to step toward him, but the officer pulled her back.  *Id.* at 1:04-1:25.  The 6'2'', 200-pound officer "had to use [his] weight leverage [sic] to keep her from pulling [him] with her to get to" her husband.  Tr. at 23.

[6]    The State charged McNary with domestic battery[3] and resisting law enforcement,[4] both as Class A misdemeanors.  At a bench trial, the State dismissed the domestic battery charge because its "witnesses on [that] count" did not appear.  *Id.* at 20.  The trial court found McNary guilty of resisting law

---

[2] McNary's comment apparently refers to her report to law enforcement earlier that day that her husband had hit her, but the officers who responded to that call did not believe they had probable cause to make any arrests at that time.

[3] Ind. Code § 35-42-2-1.3(a)(1).

[4] I.C. § 35-44.1-3-1(a)(1).

enforcement, entered a judgment of conviction on that count, and sentenced her to fourteen days executed "in the Adult Detention Center[,]" with seven days credit for time served and "an additional seven days of good time credit." *Id.* at 31. She now appeals.

## Discussion and Decision

On appeal, McNary argues that "[t]he State failed to present sufficient evidence that [she] forcibly resisted [] arrest[.]" Appellant's Brief at 6. When reviewing a challenge to the sufficiency of the evidence, we are mindful that it is the fact-finder's role, not ours, "'to assess witness credibility and weigh evidence to determine whether it is sufficient to support a conviction.'" *Teising v. State*, 226 N.E.3d 780, 783 (Ind. 2024) (quoting *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). Additionally, "[w]e consider only the evidence most favorable to" the conviction. *Id.* We will affirm a conviction unless no reasonable fact-finder could have found "'the elements of the crime proven beyond a reasonable doubt.'" *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)).

To convict McNary of resisting law enforcement, the State was required to prove that she "(1) knowingly or intentionally (2) forcibly (3) resisted, obstructed, or interfered with (4) a law enforcement officer, (5) while the officer was lawfully engaged in the execution of the officer's duties." *Runnells v. State*, 186 N.E.3d 1181, 1184 (Ind. Ct. App. 2022) (citing I.C. § 35-44.1-3-1(a)(1)). On appeal, McNary contends the State failed to prove her resistance was forcible, so we focus our analysis there.

The State contends McNary engaged in four actions which "interfered with [the arresting officer's] ability to" put her "hands behind her back to effectuate her arrest[.]" Appellee's Br. at 6. First, McNary "hid behind furniture[.]"[5] *Id.* Second, she "yelled that she was 'not going to jail[.]'" *Id.* Third, she "refused to put her hands behind her back[.]" *Id.* Fourth, she "pulled away from [the arresting officer] with such strength that he had to use his body mass . . . to prevent her from pulling him with her." *Id.*

None of these actions were strong, powerful, or violent means used to evade arrest and, consequently, McNary did not forcibly resist. In *Spangler v. State*, our Supreme Court held that a person "'forcibly resists' . . . when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." 607 N.E.2d 720, 723 (Ind. 1993). Cases considering whether a person forcibly resisted are "necessarily fact-sensitive" with different cases often presenting "facts varying only by slight degrees." *Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013). While "the statute does not demand complete passivity," the "force involved need not rise to the level of mayhem" and even a "modest level of resistance" might support the offense.

---

[5] Our review of the arresting officer's body camera does not convince us that McNary "hid" from the officers, as the State claims, and we find that the body camera footage indisputably contradicts the State's argument that she hid behind furniture to avoid arrest. *See Love v. State*, 73 N.E.3d 693, 699 (Ind. 2017) (holding that an appellate court may consider video evidence that indisputably contradicts the verdict without impermissibly reweighing evidence). Though she retreated away from officers into a bedroom and stood between a dresser and the wall, the dresser was no taller than her waist, did not obstruct the officer's view of her, and did not prevent the arresting officer from pulling her away from the wall to place her in handcuffs. *See* State's Ex. 1A at 3:48 (showing McNary walking to a space between the dresser and wall in full view of the officer).

*K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013); *Graham v. State*, 903 N.E.2d 963, 965, 966 (Ind. 2009).

[11] Starting with the fact that McNary walked into the bedroom and stood between a dresser and the wall, our Supreme Court has made clear that "any action to resist must be done with force . . . to violate th[e] statute. It is error as a matter of law to conclude that 'forcibly resists' includes all actions that are not passive." *Walker*, 998 N.E.2d at 727 (quoting *Spangler*, 607 N.E.2d at 724). In *Spangler*, a sheriff's deputy attempted to serve the defendant with process, but the defendant turned and walked away. 607 N.E.2d at 721. The deputy told him to "come back here[,]" but he stopped only long enough to say, "I'm not going to take those papers here, don't bother me." *Id.* at 722. The Court reasoned that from these facts,

> [no] reasonable trier of fact could conclude with the required level of certainty that [the defendant] acted forcibly[.] . . . There was no strength, power, or violence directed towards the law enforcement official. There was no movement or threatening gesture made in the direction of the official. . . . [T]here is no evidence of any "forcible" actions that the charged crime prohibits.

*Id.* at 724-25. Similarly, here, McNary did not direct any forcible action toward the officers by merely walking away from them into the bedroom and standing next to the dresser.

[12] Nor did McNary forcibly resist when she "yelled that she was 'not going to jail[.]'" Appellee's Br. at 6. Though the resisting law enforcement statute

"contemplates punishment for the active *threat* of [] strength, power, or violence[,]" *Walker*, 998 N.E.2d at 727 (emphasis added), none of the statements made by McNary to the arresting officer were threatening. While her statements communicated dissatisfaction with the arrest and a desire not to go to jail, without more, this is a far cry from the threatening behaviors that have been found by prior decisions to be sufficient to convict a defendant of resisting law enforcement. *See, e.g., id.* at 728 (defendant advanced on officer with clenched fists raised and ignored officer's orders to stop); *Manuel v. State*, 248 N.E.3d 624, 628-29 (Ind. Ct. App. 2024) (defendant reached for and grabbed a firearm); *Tyson v. State*, 140 N.E.3d 374, 378 (Ind. Ct. App. 2020) (defendant refused to take his hands out of his pockets and reached for items that the officer "perceived . . . as dangerous"), *trans. denied*; *Pogue v. State*, 937 N.E.2d 1253, 1258 (Ind. Ct. App. 2010) (defendant displayed a box cutter and refused to drop it), *trans. denied*; *see also Spangler*, 607 N.E.2d at 724 (reversing conviction when, among other things, "[t]here was no movement or threatening gesture made in the direction of" officers).

[13] Moreover, while McNary's refusal to place her hands behind her back may have been *resistance*, this lack of cooperation was not *forcible resistance*. In *Graham v. State*, our Supreme Court held that simply refusing to present arms for handcuffing is not forcible resistance. 903 N.E.2d 963, 966 (Ind. 2009). And, in *K.W.*, the Court found that a defendant had not forcibly resisted when he "turned, [and] pulled away" when an officer grabbed his wrist for handcuffing. 984 N.E.2d at 612-13. Though the Court opined in *Graham* that

"'stiffening' [] one's arms when an officer grabs hold to position them for cuffing" may be forcible resistance, 903 N.E.2d at 966, a more recent panel of this Court recognized that "the 'stiffening' statement in *Graham*: (1) was not necessary to the Court's decision; (2) is difficult to square with the Court's subsequent holding in *K.W.*; and (3) appears at odds with other statements made by the Court over the years." *Runnells*, 186 N.E.3d at 1185 (citing *Spangler*, 607 N.E.2d at 724; *Snow v. State*, 77 N.E.3d 173, 177-78 (Ind. 2017) (reasoning that aggression is an element of resisting law enforcement)).

[14] Thus, we disagree with the State's assertion that McNary forcibly resisted when she "pull[ed] against" the arresting officer's hand as he maneuvered her hands behind her back. Tr. at 23. Our review of the officer's body camera shows that though she did not voluntarily place her arms behind her back, any resistance she exerted against the officer merely required him to force her to comply with his commands but did not amount to forcible resistance. *See, e.g.*, *A.C. v. State*, 929 N.E.2d 907, 911 (Ind. Ct. App. 2010) (no forcible resistance when defendant refused to stand and officer had to forcibly pull him to his feet).

[15] Finally, the fact that McNary attempted to "charge toward" her husband while officers led her out of her home is, without more, insufficient to support her conviction. Appellee's Br. at 5. The arresting officer testified that

> as I was walking her out, I had a hold [sic] of one of her arms to maintain control of her and so she didn't fall because her hands were in handcuffs behind her back. She began trying to charge. She's a relatively small female. I'm 6'2'' and roughly two hundred pounds and I had to use my weight leverage [sic] to

keep her from pulling me with her to get to [her husband] who was on the scene.

Tr. at 23. The State argues that this was forcible resistance because the officer "had to . . . use significant force to regain control of her by using all his weight . . . as leverage to prevent being pulled by her." Appellee's Br. at 9. However, "an officer's use of force does not establish that the defendant forcibly resisted." *Macy v.* State, 9 N.E.3d 249, 254 (Ind. Ct. App. 2014). Though here, the arresting officer's body camera shows that McNary attempted several times to move toward her husband, this movement was not directed at the officer, nor was it made with the intent to resist, obstruct, or interfere with the officer while he was lawfully engaged in his duties. *See Spangler*, 607 N.E.2d at 724 (holding that the statute prohibits "strength, power, or violence directed towards [a] law enforcement official").

[16] We note that in many prior cases where the defendant pulled away from officers, the forcible element was satisfied by the fact that the defendant committed violent actions while the officers attempted to establish control. For example, in *Jordan v. State*, another panel of this court affirmed a defendant's conviction when she attempted to run away from the officer and, after the officer was able to catch up to her, "yanked her shoulder away, twisted and turned, and started firing her arms and pulling her body away from [him] so that [he] could not get control of her." 37 N.E.3d 525, 528-29 (Ind. Ct. App. 2015) (internal quotation marks omitted). Similarly, in *Johnson v. State*, a panel of this Court affirmed a defendant's conviction when, among other things, he

turned away from an officer who was attempting to search him "and pushed away [from the officer] with his shoulders while cursing and yelling." 833 N.E.2d 516, 517 (Ind. Ct. App. 2005).

[17] We find *Jordan* and *Johnson* distinguishable from the present case. Unlike *Jordan*, the officer here did not testify—and his body camera does not depict[6]—that McNary yanked, twisted, or engaged in any violent action against him after he attempted to reestablish control. And unlike *Johnson*, McNary did not use her shoulder or any other part of her body to physically impede the officer's effort to maintain control. Thus, while McNary's attempt to move toward her husband certainly impeded the officer's ability to lead her directly to his squad car, no reasonable fact-finder could have determined, beyond a reasonable

---

[6] We note that the arresting officer's body camera footage does not clearly depict his or McNary's actions as he led her from her home, and the description of the event provided in his testimony is similarly lacking in detail as it merely provides, in its entirety, as follows:

Q   And once you had her in handcuffs what happened next?

A   So at that point I began walking her over to where our police vehicles are to fill out paperwork. And she was forcefully trying to pull away and charge at [her husband] who was on the scene standing in front of the residence.

Q   And can you describe that a little bit more for the Court?

A   So as I was walking her out, I had a hold of one of her arms to maintain control of her and so she didn't fall because her hands were in handcuffs behind her back. She began trying to charge. She's a relatively small female. I'm 6' 2" and roughly two hundred pounds and I had to use my weight leverage [sic] to keep her from pulling me with her to get to [her husband] who was on the scene.

Q   Is it fair to say you had some difficulty with that?

A   Correct.

Q   And that was due to the amount of power she was using to try to get –

A   Correct.

Tr. at 23.

doubt, that she *forcibly* resisted, obstructed, or interfered with her arrest as defined by our Supreme Court. *See Walker*, 998 N.E.2d at 727 (defining forcible resistance, obstruction, or interference as the use of "strong, powerful, violent means to impede an officer in the lawful execution of his or her duties").[7]

## Conclusion

[18] For these reasons, we conclude that there is insufficient evidence that McNary forcibly resisted, obstructed, or interfered with the arresting officer in the course of his lawful enforcement duties. We reverse and remand with instructions for the trial court to enter a judgment of acquittal.

[19] Reversed and remanded.

Altice, C.J., and Pyle, J., concur.

---

[7] In reaching this decision, we are mindful of our Supreme Court's observation that cases involving resisting arrest "are necessarily fact-sensitive" and exist "along a spectrum of force, . . . with the facts varying only by slight degrees." *Walker*, 998 N.E.2d at 727. In *Walker*, the Court found that the fact that an officer had to use force to subdue the defendant did "not in and of itself[] prove any forcible action on [the defendant's] part." 998 N.E.2d at 728. However, because there was additional evidence that the defendant walked toward officers with clenched fists, the Court reasoned that the fact-finder could infer "that his aggression was at that point *directed at*" the officer, which was "sufficient to show an active threat of strength, violence, or power." *Id.* at 729 (emphasis added).

We reiterate that here, the arresting officer's body camera did not clearly capture his or McNary's actions as she attempted to pull away, *see supra* note 6, so we rely on the officer's testimony to determine what happened in that moment. *See Love*, 73 N.E.3d at 700 (giving deference to police testimony where a video of the arrest was of such poor quality that it did not "irrefutably contradict [the] testimony."). Nothing in the officer's testimony suggested that McNary directed force—or a threat of force—at him, but rather that he "had to use [his] weight leverage [sic] to keep her from pulling [him] with her to get to" her husband. Tr. at 23. We thus find the officer's testimony insufficient, without more, to support McNary's conviction under *Walker*.

ATTORNEYS FOR APPELLANT

Talisha Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Jennifer Anwarzai
Deputy Attorney General
Indianapolis, Indiana

Gabriela Alvarez
Certified Legal Intern
Indianapolis, Indiana